Bannister vs. Phelps and another.

BANNISTER, Appellant, vs. PHELPS and another, imp., Respondents.

*January 15 — February 2, 1892.*

*Debtor and creditor: Fraudulent conveyance: Knowledge of grantee.*

To secure a *bona fide* debt of long standing a mother gave to her daughter a mortgage of all her real estate, including her homestead exempt from execution, worth in all more than twice the amount of the debt. The mortgage was given after verdict but before entry of judgment against the mother in favor of a creditor whose claim she had refused to pay on the ground that it was not an honest

Bannister vs. Phelps and another.

debt; and the mortgage was immediately recorded. The debt secured by the mortgage was for moneys borrowed by the mother from the daughter and used in paying the purchase money for the premises mortgaged. The evidence, showing the above facts among others, is *held* not to show that the daughter participated in or knew of any fraudulent intent of the mother; and the mortgage is therefore valid as to all the property covered by it.

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was brought to foreclose a mortgage against Mary Bannister, the plaintiff's mother, *Nathaniel Phelps,* a judgment creditor of said Mary, and *E. A. Putnam,* receiver of the property, etc., of Mary Bannister, appointed in proceedings supplementary to execution on a judgment against her in favor of the defendant *Phelps,* in the circuit court for Fond du Lac county, for about $300, rendered a few days after the execution and recording of the mortgage in question, which was March 15, 1890. At the time the mortgage was executed by the mother to her daughter, the former was indebted to the defendant *Phelps* in the sum of $500 and interest thereon from the 22d of June, 1888, by reason of having signed three notes to compromise and settle a proceeding for bastardy against one of her sons, and two actions for the recovery of the greater part of said indebtedness were pending when the mortgage was given, and in both of which judgments were subsequently given in favor of *Phelps.* The mortgage was given to secure three promissory notes, made by the defendant Mary Bannister to the plaintiff, her daughter, amounting to $1,000, for money actually loaned, one of which was for $240.37, dated February 2, 1874; one for $400, dated February 22, 1876; and the other for $359.93, dated December 4, 1876. The mortgaged premises consist of seventy-six acres of land, being all the real estate owned by the said Mary Bannister, forty acres of which constitute her homestead; and the lands are of the value of $45 or $50 per acre.

The judgment creditor, *Phelps,* and the receiver, *Put-*

*nam*, were made defendants under the general allegation of having some claim or interest in or to the mortgaged premises subsequent to the mortgage. They put in separate answers, in substance that the plaintiff and the said judgment debtor conspired together for the purpose of defrauding, hindering, and delaying the creditors of the said Mary Bannister, and that, with that intent and in order to prevent *Phelps* from collecting his debt against her, the mortgage was executed to the plaintiff, but without any valid consideration; that the notes secured thereby were barred by the statute of limitations; and that, unless the mortgage should be set aside, *Phelps* would be defrauded out of his debt. And they asked that the mortgage be set aside and canceled accordingly, but these facts were not, in form, pleaded as a counterclaim. The circuit court found that all the material allegations of the answers of the defendants *Phelps* and *Putnam* were true, and that the mortgage described in the complaint was given to the plaintiff by the mortgagor, Mary Bannister, for the purpose and with the intention to cheat and defraud or hinder and delay the defendant *Phelps* in collecting his said claim; and judgment of foreclosure was rendered, as against the homestead only, for the amount due from the defendant Mary Bannister to the plaintiff on the notes secured by the mortgage,— $2,152.35 and costs; but the court dismissed the complaint as to the defendants *Phelps* and *Putnam*.

Such other facts as are material are stated in the opinion. The plaintiff appealed from the part of the judgment dismissing her complaint as to the part of the mortgaged premises not being the homestead, and as to the defendants *Phelps* and *Putnam*.

For the appellant there was a brief by *Hoey & Hammond*, attorneys, and *Maurice McKenna*, of counsel, and oral argument by *Mr. McKenna*.

For the respondents there was a brief by *Duffy & Mc-Crory*, and oral argument by *F. F. Duffy*.

PINNEY, J.    After careful consideration of the evidence contained in the bill of exceptions, and of all the facts and circumstances of the case, we feel constrained to hold that the plaintiff's mortgage is not fraudulent, but is a valid security against all the lands described in it.    The right of a creditor to take a mortgage or other security upon the property of his debtor, which, by reason of his superior diligence, will amount to a preference over all his other creditors, although the debtor may be pecuniarily embarrassed or in failing circumstances, or judgments are about to be taken against him, where no assignment for the benefit of creditors is made or contemplated and there is no fraudulent intent, cannot be denied.    *Mehlhop v. Pettibone*, 54 Wis. 656; *Stevens v. Breen*, 75 Wis. 595; *Anstedt v. Bentley*, 61 Wis. 629.    The fact that the parties are relatives does not render the mortgage or other security presumptively fraudulent, but justly subjects the transaction to close scrutiny.    To take and enforce a mortgage or other security under such circumstances is the right of a vigilant creditor, although the consequence is to diminish the means of the debtor to pay other debts,— the necessary consequence of giving one creditor a preference over others. The debtor has the right to give and the creditor to take such preference where there is no fraudulent intent on the part of the parties to the transaction; and a fraudulent intent on the part of the debtor alone, not known to or participated in by the creditor, will not render the security fraudulent if no general assignment for the benefit of creditors is contemplated or made.    In such cases, as was said by CASSODAY, J., in *Mehlhop v. Pettibone*, 54 Wis. 656, "it is established that before a conveyance, made by a grantor with the intent to defraud his creditors, will be set aside as against the grantee, it must be made to appear that such grantee participated in or had knowledge of such intent."    The burden of proof in such cases is on the party

Bannister vs. Phelps and another.

seeking to impeach the conveyance.  *Erdall v. Atwood*, 79 Wis. 1.

Although, as a rule, we feel reluctant to disturb the finding of a trial court on questions of fact where the court below had advantages of testing the credibility of the witnesses of which this court is necessarily deprived, we cannot resist the conviction that the proof of the plaintiff's participation in or knowledge of the fraudulent intent alleged against Mary Bannister in making the mortgage is too unsatisfactory to impeach the security in the plaintiff's hands, founded, as it is, on an honest consideration, even though her debt was one of long standing.  The honesty and integrity of her debt is not seriously questioned, and it is clearly established by the evidence.  The circuit judge, in a brief but somewhat general opinion, embraced in the bill of exceptions, says: " The money for which the notes were executed by Mary to *Laura Bannister* was actually loaned to the mother in 1874 and 1876."  Where an honest and meritorious creditor is eagerly and earnestly seeking to obtain priority over other creditors, as we have seen he may lawfully do when his debtor is embarrassed or threatened with financial or business complications, he may not in all cases be able to perceive or understand that his debtor is only too willing, from personal or other reasons, to give him the desired advantage; but at the same time it is certainly his duty, at the peril of losing his security, to abstain from becoming party or privy to a fraudulent attempt on the part of his debtor to deprive other creditors, equally meritorious, of their rights.  The facts and circumstances which properly prompt the creditor to vigilance and activity consist generally of those which are usually given in evidence in cases brought to impeach transactions as fraudulent, such as straitened circumstances of the debtor, and the danger growing out of the fact that he is or may be on the eve of financial disaster, that actions are pending against

him, and he is threatened with attachments against his property. The fact that the $1,000 for which the notes secured by the mortgage were given was bequeathed to the plaintiff by her father, and was used by the mother, to whom she loaned it, in paying the purchase money for the premises afterwards mortgaged to the plaintiff as security for it, raises a strong equity in her favor; and that in taking such security the mortgage was not confined to that portion of the farm not exempt, but was extended to and included the homestead as well, is a fact, in our judgment, of considerable weight in determining whether or not the mortgage is fraudulent, and as bearing upon the intention of the plaintiff in taking it.

The evidence shows that the plaintiff, who is about forty years of age, has been ever since early childhood deformed and crippled, so much so as to be unable to walk, and that she has been supported in her mother's family for doing its sewing. Her sphere of life and action has doubtless been greatly narrowed by her unfortunate condition, and this is a fact having a material bearing upon the knowledge that ought to be imputed to her of ordinary occurrences and transactions, as well as of the facts and circumstances bearing upon the purpose for which the mother executed the mortgage, and whether, when she took it, she knew or participated in any fraudulent intent on her mother's part to cheat or defraud her other creditors. We think that, under the circumstances, it was the highest duty of the mother, and one which she would naturally be. quick to perceive and discharge, to give her daughter, as she lawfully might, a preference over her other creditors. It appears in the evidence of both the mother and daughter that the latter had frequently asked the former for security at times previous to the giving of it, and that it had been frequently promised her, and that they had talked about giving it before *Phelps'* suits were commenced. The mortgage was

drawn up at the request of the mother and daughter, and several others were present when it was executed, and they testified that nothing was said about the claim of *Phelps*. The plaintiff testifies that it was not given to prevent the collection of *Phelps'* debt; that, while she knew that suits had been brought by him against her mother, she did not know that judgment had been obtained; and the testimony of other witnesses, as already stated, is to the effect that those suits were not talked about or spoken of when the mortgage was given. It appears that a judgment on one of the notes given to *Phelps* had been recovered and paid before the mortgage was given; that there was a prior mortgage on the premises, still unpaid, to one Bristol, amounting to $450; and that at or about the time in question the mother gave a chattel mortgage and a bill of sale on her personal property for moneys actually advanced and used by her in payment of her debts and for some other purposes; but there is no evidence to show that the plaintiff knew of these transactions when she took her mortgage.

The evidence shows that the mother did not regard the claim of *Phelps* as an honest one; that she desired to secure and pay all her other creditors in preference to that claim, and was willing to and desired to dispose of her property in this way, in order that he should not be able to collect it; but it does not satisfactorily show that the plaintiff knew of or participated in her mother's views and plans. The badges or *indicia* of fraud relied on as against the plaintiff are not sufficient, we think, to render her mortgage presumptively fraudulent, and consist only of facts and circumstances such as usually attend the giving to one creditor a preference over the rest,— as, that the mortgage was given two days after verdict, but before entry of judgment; that it was thought necessary to record it at once; that the mother said she thought the plaintiff was entitled to a mortgage, if any one was; that she refused to pay *Phelps'* claim

because she did not think it was an honest debt; that the property covered by the mortgage was worth $5,000 or $5,500; and that the parties to the transaction are relatives,— a fact which, with some others relied on, has already been sufficiently considered. Many, or even all, of these circumstances usually attend the giving and securing a preference over other creditors, and are entirely consistent with good faith on the part of the creditor taking it. We think the testimony is too weak and inconclusive to defeat the plaintiff's mortgage, and that she is entitled to judgment of foreclosure and sale in the usual form against the entire mortgaged premises and as against all the defendants in the action.

The appeal is only from certain portions of the judgment, but in order to carry out and give effect to the decision of the court it will be necessary to reverse the entire judgment, and that a new judgment be rendered by the circuit court accordingly.

*By the Court.*— The judgment of the circuit court is reversed, with costs as against the respondents, *Phelps* and *Putnam*, only, and the cause is remanded with directions to render judgment of foreclosure in accordance with the opinion of this court.