# CHARLESTON.

## REED v. NIXON *et al.*

Submitted June 6, 1892.—Decided June 11, 1892.

1. REVERSAL—RECORD—APPELLATE COURT—PRACTICE.
    Where an appellant complains of a decree of the Circuit Court and asks for a reversal, he must present such a record as will make it manifest—*first*, that error has been committed; and, *secondly*, that he has been injured thereby.

2. REVERSAL—RECORD—APPELLATE COURT—PRACTICE.
    Where, upon consideration of the bill, answer and other pleadings in connection with the report of a commissioner in chancery an error becomes apparent, the Circuit Court may correct it on motion without an exception or may recommit for further investigation; but when the objection is for the first time raised

in this Court, and the matter is one which may be affected by extraneous testimony, ordinarily this Court will not interfere.

*Dent & Dent* for appellant cited 22 W. Va. 356; 35 W. Va. 634.

*B. F. Martin* for appellee cited 27 W. Va. 639; 28 W. Va. 715; 30 W. Va. 495; 19 W. Va. 459; 21 W. Va. 262; 24 W. Va. 524; 27 W. Va. 227; 2 Whar. Ev. § 797; Broom Leg. Max. 341; Best. Ev. § 595; 2 Herm. Estop. § 599; 1 Pom. Eq. §§ 397, 400, 401; 2 Pom. Eq. § 899; 2 Bac. Ab. 594; 27 W. Va. 550.

LUCAS, PRESIDENT :

This was a suit in chancery, brought by Robert L. Reed as plaintiff against Elias L. Nixon and others as defendants, in the Circuit Court of Taylor county. The bill was filed at February rules, 1888, and sets out that on the 28th day of November, 1887, the defendant Elias L. Nixon confessed a judgment in favor of his father, John G. Nixon, in the clerk's office of the Circuit Court of Taylor, for the sum of five thousand two hundred and fifty dollars and sixty two cents; and on the 29th day of November, 1887, he confessed a judgment for five hundred and seventy dollars and thirty cents in favor of Creed M. Scranage as administrator of James D. Scranage, deceased; and that on the 5th day of November, 1887, the said Elias L. Nixon had confessed a judgment in favor of Henry P. Davidson, administrator of John L. Nixon, for one thousand nine hundred and nineteen dollars and eighty six cents; and on the 30th day of November, 1887, said defendant confessed judgment in favor of the plaintiff for six hundred and seventy one dollars and eighty one cents.

The bill then proceeds to set out two tracts of land owned by the said defendant Elias L. Nixon, and charges that the plaintiff's judgment is a lien against both of these tracts. The bill further charges that the three preceding judgments in favor of John G. Nixon, C. M. Scranage, and Henry P. Davidson, administrator, *etc.*, are fraudulent, and were given by confession, with intent to delay, hinder, and defraud the plaintiff and other creditors of the said Elias L. Nixon.

The Circuit Court referred the cause to a commissioner, and such proceedings were had that on the 18th day of April, 1890, a decree was entered settling the principles of the cause, and directing the land of E. L. Nixon to be sold to discharge the debts that had been audited as liens against it. From this decree John G. Nixon has appealed, upon the ground that it was erroneous in sundry particulars, but chiefly in the matter that we are about now to consider.

The decree found that the judgment confessed in favor of said appellant was the offspring of fraud and collusion between said Elias L. Nixon and his father, John G. Nixon, the appellant in this case. This was a question almost entirely of fact, and depended upon the weight of evidence and the credibility of witnesses. A well-known rule, established by this Court by many decisions, is that in questions of fact, where the evidence is conflicting, the decree of the Circuit Court will not be disturbed by us, unless, in our opinion, it is plainly wrong. *Smith* v. *Yoke*, 27 W. Va. 639; *Doonan* v. *Glynn*, 28 W. Va. 715.

The evidence in this case is conflicting, but, even were it a case of first impression with ourselves, we should be bound to find that the weight of testimony is for the plaintiff, and that it establishes beyond any reasonable controversy a fraudulent intent upon the part of father and son in the confession of this judgment. I will not go into any detail of the testimony, but content myself with observing that the evidence for the defendants is constituted entirely of the depositions of the two Nixons, father and son; that it is entirely unsupported by any sufficient documentary evidence; and that the evidence of these defendants is confused, conflicting and entirely unsatisfactory. The evidence for the plaintiff, on the other hand, consists of confessions made by the son at the very time, or immediately before, the judgment was confessed, and that he expressed a fraudulent purpose to thwart and defy his creditors, and to secure a home and living at their expense. Upon this main question, therefore, we find no error whatever in the decree of the Circuit Court, and to this extent it must be affirmed.

The assignment of error which we shall next consider is in regard to a debt called the "Willis debt," which had been

assigned to one Fortunatus D. Kemble, who is made a defendant in the cause, and filed his answer, setting up in brief, but in satisfactory, form a debt which was a lien upon a tract of two hundred and fourteen and three quarter-acres in the bill mentioned.

It seems that this tract had originally belonged to a man by the name of Gawthrop, and that Gawthrop had sold it to Willis, and Willis to the defendant Elias L. Nixon. It appears, moreover, that Willis had not discharged the full purchase-money due from him to said Gawthrop at the time when the former sold to Nixon, but that there was a note (so called, but really a purchase-money bond) for two thousand three hundred and seventy seven dollars, executed by said J. H. Willis, and payable to said Gawthrop or order, and by the latter assigned in blank to the respondent F. D. Kemble.

Now it is quite manifest, that, while this bond became a lien upon the tract reserved in the deed to Willis from Gawthrop, and while the land was responsible for the payment of this lien as one prior to all others which had been audited in the cause, yet, so far as the defendant Elias L. Nixon was concerned, there should be no personal decree against him for this bond; and, when a decree was taken against his land for its payment, it is equally obvious that it should be deducted from the aggregate of his own purchase-money, or so much thereof as remained unpaid at the date of the commissioners' report, and at the date of the final decree which we are considering.

We find, upon examining the decree, that a personal decree was rendered against said Elias L. Nixon for this purchase-money bond, which was an error. The said Elias L. Nixon, however, has not appealed, and, therefore, so far as he is concerned, as he has not felt himself aggrieved, and has not asked for relief, we can not, in this proceeding, interpose in his behalf. In regard to his father, the appellant, his judgment has been decreed to be good between him and his son, Elias L. Nixon, and it is adjudged to be a lien on all the real estate of the latter, including the tract of two hundred and fourteen and three quarter acres. If it had been made to appear clearly that the error of not de-

ducting from the purchase-money due by Elias L. Nixon the bond which his vendor had left unlifted and assigned to F. D. Kemble, and that the appellant had been injured thereby, we could afford him relief upon the well-known principle that creditors who have liens agains the real estate of a debtor may, before the commissioner or court auditing such liens, contest the validity of any other debt which may be presented for audit or payment. *Woodyard v. Polsley*, 14 W. Va. 211.

In the present case, however, the point was not raised by the appellant in the court below, nor, so far as it appears, did he raise it at any time before the commissioner, nor did he take any exception to the report of the commissioner before the Circuit Court. Neither is there anything in the evidence or in the record which has been presented to us, to indicate clearly and beyond controversy that this Kemble bond, which amounted at the date of the decree to the sum of three thousand two hundred and forty five dollars and five cents, was adjudged to be a lien, in addition to all of the purchase-money which Elias L. Nixon admitted to be due. Upon this question, which could have been affected by extrinsic evidence properly introduced before the commissioner, we are left entirely in the dark.

In his answer and testimony E. L. Nixon claims to have paid one thousand dollars in cash upon the land which he bought of Willis, and also to have taken up one bond of two thousand dollars, due in one year after said purchase, and to have paid three hundred dollars upon another bond. He produced no vouchers or evidence or receipts for these payments, and we would be at liberty to infer from the evidence that in their settlement it had been in some manner arranged to embrace and offset the Kemble debt, which the vendor, Willis, owed when he sold the land to Nixon. At all events, it is a well-established principle that an appellant must show by the record not only that there is error in the judgment of the Circuit Court, but that he himself has been thereby injured. In the present case, the appellant has met neither of these requirements. By failing to make the contest in the lower court he has left this tribunal utterly in the dark as to whether any error under this as-

signment has been committed; and, in the second place, it clearly appears that, even if this sum of three thousand, two hundred and forty five dollars and five cents were deducted from the aggregate of liens which have to be paid out of the proceeds of the land before the debt of the appellant could be reached, still his debt would be hopelessly in arrear, and could not be reached at all.

According to the decree and the commissioner's report, the debts which are to be paid before that of the appellant, principal and interest, on the 18th day of April, 1890, amounted to fifteen thousand, six hundred and eighty six dollars. This amount must now be increased by over two years of interest. The land, when formerly sold by the commissioner of the Circuit Court, under proceedings which were afterwards set aside, only brought ten thousand, eight hundred and forty one dollars. It is quite apparent, therefore, that even after deducting the Kemble debt, there would be no residuum to which the appellant could resort. Courts of appellate jurisdiction can not proceed, in annulling decrees from which appeals have been taken, upon mere conjecture or suspicion of error; the error must be made manifest, to the prejudice of the appellant.

In the present case, therefore, we must decline to disturb the decree complained of upon any of the errors assigned, and the same must be fully affirmed.

AFFIRMED.