*E. M. NADAL et al. v. E. E. BRITTON, Administrator of R. W. King, et al.

(DEFENDANTS' APPEAL.)

*Fraudulent Conveyance—Participation in by Beneficiary— Evidence.*

1. Where, in an action to set aside a conveyance made by a deceased husband to a trustee to secure a debt due to his wife, the validity of the debt was not attacked, but it appeared that, at the time of the execution of the deed, the husband was embarrassed by debt and had little or no property except that so conveyed, and that creditors other than she knew nothing of the debt due from the trustor to his wife or of the deed in trust to secure the debt: *Held,* that these facts constituted no evidence of a fraudulent intent on the part of the trustor or knowledge of such intent on the part of the wife.

2. Where the *bona fides* of a debt was admitted, and the execution and delivery of a deed of trust to secure the same were established, and there was no evidence that the beneficiary withheld the deed from registration to bolster the credit of the trustor, the fact that such deed was not registered for nearly four years after its execution and delivery was no evidence that the beneficiary, the wife of the trustor, had any knowledge of the fraudulent intent of her husband in making such conveyance.

3. In such case (the principal consideration for the execution of the deed being money then loaned by the wife to the husband) the burden was upon the plaintiffs to prove not only the fraudulent intent of the grantor, but also the fact that his wife, the secured creditor, had knowledge of that intent and participated in it.

4. While a statement made to two of the plaintiffs by the wife, during her husband's last illness, that he owed nothing and that, therefore, it would not be necessary to sell the house and lot, which she wished her daughters to have, might, perhaps, tend to show that her debt was fictitious, yet, the debt being admitted, it did not tend to show that she had knowledge that her husband, when he borrowed her money and secured its repayment by a deed in trust, was contriving to hinder or delay his creditors, present or future.

---

*SHEPHERD, C. J., did not sit on the hearing of this case.

5. Where the jury found that a debtor, with the intent to hinder and delay his creditors, conveyed land to a trustor to secure a debt due to his wife in part for money then borrowed from her, but did not find that the wife had knowledge of such fraudulent intent, it was error to render judgment setting aside the conveyance and against the wife for costs.

CIVIL ACTION, tried at February Term, 1892, of WILSON Superior Court, before *Bryan, J.,* and a jury.

It was in the nature of a creditor's bill against the administrator of Dr. R. W. King, deceased, Peter Hines, trustee in a deed of trust, and Mrs. King, the widow of the deceased, and sought to set aside the deed of trust made by the decedent in February, 1887, and recorded (after his death) in January, 1891, to secure a debt due from the decedent to his wife.

The issues submitted to the jury were as follows:

1. Was the trust deed executed and delivered?

2. Was said deed made with intent to hinder, delay or defraud creditors?

To each of the issues the response was, "Yes."

Among the allegations of the complaint filed by plaintiffs was one which stated that the defendant Carrie J. King, wife of the decedent, "holds a note against her deceased husband dated February 15, 1887, for $2,500 with eight per cent. interest from date."

The validity of the said debt was not attacked, but it was alleged that the deed to secure the same was not delivered to the trustee or recorded until after the death of Dr. King, and that the trustee had no knowledge of its existence, and that, if ever made, it was made with the intent to hinder, delay and defraud the creditors of Dr. King, it being his purpose, understood by the wife, to retain possession of the property as a basis of future or continuing credit; that the failure for nearly four years to record the deed, the secrecy of the transaction, the lack of a knowledge of its nature by

the subscribing witness and the trustee, the embarrassed circumstances of the trustor, who owned little or no other property, his remaining in possession and holding himself forth to the world as the owner of the property, free from encumbrances, and incurring debts on the credit of such ownership, were all badges of fraud which raised a presumption of fraudulent intent, etc.

For the plaintiffs S. M. Warren, Register of Deeds of Wilson county, testified as follows: "I am Register of Deeds of Wilson county. I registered the trust deed in controversy in book 29, at page 256. This deed was brought to my office at first by Mrs. Britton, daughter of the defendant, Mrs. King, and the intestate, January 21, 1891. Dr. King, the intestate, died January 19, 1891. I did not record the deed when Mrs. Britton brought it to me, but she took it off with her, and in about one hour Mr. Peter Hines, the trustee therein named, brought it back, and I thereupon recorded it. He waited for me to record it and took it with him."

For the plaintiffs Dr. C. E. Moore testified: "I was a partner of Dr. King (the intestate). The partnership continued for three years, ceasing in January, 1889. I am subscribing witness to the instrument. I did not know anything about its existence until, after his death, I was called upon to prove it. I must have signed it as attesting witness, for the signature shown me is in my handwriting."

Several of the plaintiffs' creditors testified that they knew nothing of the deed of trust until after the death of Dr. King.

The defendants introduced by consent a written statement from Dr. J. N. Bynum to the effect that he, as executor of Fannie Hines, paid to Mrs. King, shortly before the execution of the trust deed, the sum of $2,061.10 and several notes, particularly one against Dr. King himself for $306.

Mrs. Carrie J. King, a witness for the defendants, testified as follows:

"I am Dr. King's widow. I knew of the deed of trust. In December, 1886, the Doctor seemed to be worried one night. I asked him what was the matter and he said that he owed money for the building of the house we lived in. I told him I would loan him the money when Dr. Bynum paid it to me, provided he (my husband) would give me a mortgage to secure it. I turned over to him something over $2,000, in cash, and the note that Mrs. Hines had against him and that had been turned over to me by Dr. Bynum. I also cancelled a note that I held against him for something over $300. Dr. King asked me whom I preferred to write the mortgage, and I told him Mr. William Dortch of Goldsboro, N. C., and that I wanted Uncle Peter Hines for trustee. Mr. Dortch wrote the mortgage and came to the house with the Doctor. Mr. Dortch handed me the mortgage and said, 'This is your property.' I said, 'I suppose I must now have this registered.' He said, 'Just as you please; it is good for ten years without registration, unless you sign another, which is registered first.' Supposing from what he said that the deed was good without registration, I did not have it registered. Mr. Dortch took the mortgage and said he wanted to see Mr. Hines, the trustee, and that he (Mr. Dortch) would send the mortgage back to me. I received the mortgage a few days after that from Mr. Dortch, through the mail. I put it in a tin box with my private papers and kept it there ever afterwards. The morning after Dr. King's death Mr. Britton, who knew of the existence of the mortgage, came after the mortgage to have it registered. Mr. Britton saw it next day; I gave it to him. Mrs. Britton brought it back to me. I did not keep the mortgage unregistered to enable him to defraud creditors. I heard the testimony of

Mr. Rowland and Mr. Oettinger. The time was in 1885. I did not tell them that Dr. King owed nothing. Since the execution of the trust deed, I never told them that Dr. King owed nothing. Mr. Rowland was there in his last sickness, not Mr. Oettinger. I never told any one that Dr. King owed me nothing."

*Cross-examination.*—"I was married November 8, 1859. He bought the place during the war. I don't know when he started to rebuild. I let him have $325, and he said that would do. He said, 'Here is $5,000 in accounts, and I don't expect to collect $500.' He owed, he said, about $3,000. After the Doctor went to the Legislature his practice fell off. He was not able to do much. He went to the Legislature two years before he died; he said he wrote prescriptions, but did not furnish much medicine."

Defendants here tendered to the plaintiffs for cross-examination Mr. Britton, Mrs. Britton, Mrs. Breeden and Mrs. Carraway.

Mr. Britton was alone cross-examined, as follows: "I am a son-in-law of Mrs. King. I told her the mortgage must be recorded. I was looking among Dr. King's papers. I knew it ought to be recorded, and my counsel told me it ought to be recorded. As for Dr. King's personal estate, his accounts amount to about $17,000. Some of them are good; I should think I ought to collect twenty per cent. I am Dr. King's administrator. I had a number of claims presented to me. I neither assented nor objected to them. I have not filed any inventory. I filed a petition to sell land to make assets."

Upon cross-examination witness said: "I looked among Dr. King's papers for the insurance policy. We found it on top of his desk. Mrs. King said she had the last receipt on the policy. Looking among her papers she said, 'Here is my mortgage.' I told her that it ought to be registered,

and that my attorney had so advised.   She said she could
see no use in registering it; that Mr. Dortch said any time
in ten years would do."

Upon the verdict the Court rendered judgment against
the defendant Carrie J. King for the costs of the action,
and ordered the deed of trust to be delivered up and can-
celled and the land to be sold, etc., from which judgment
the defendants appealed.

*Messrs. J. E. Woodard, G. W. Blount, Batchelor & Devereux*
and *Jacob Battle,* for plaintiffs.

*Mr. T. W. Strange,* for defendants (appellants).

BURWELL, J.: The plaintiffs are creditors of R. W. King,
deceased.   The defendants are his administrator and his
widow.   The object of this action is to have declared
fraudulent and void a deed in trust, made in February,
1887, by R. W. King to Peter Hines, to secure a debt of
$2,500 due from him to his wife.   This deed was not regis-
tered till January, 1891, a few days after the death of King.

Two issues were submitted to the jury (neither party
objecting thereto) as follows:

1. Was the trust deed executed and delivered?

2. Was said deed made with intent to hinder, delay or
defraud creditors?

His Honor instructed the jury to answer the first issue
in the affirmative.   To this the plaintiffs did not except.

The fact that R. W. King was justly indebted to his wife,
at the date of the execution and delivery of this deed,
to the amount thereby secured to her, does not seem to
have been controverted.   Indeed, the amended complaint
makes no allegation that the debt was not a just one and
avers that "the defendant Carrie J. King holds a note
against her deceased husband, dated February 15, 1887,

for $2,500." The *bona fides* of the debt and the execution and delivery of the trust deed are thus established.

His Honor was asked to charge the jury that there was no evidence upon which they could find that the deed was made by King with intent to hinder, delay or defraud creditors. This he refused to do, and the defendants excepted. In this we think he erred.

When the indebtedness was admitted or uncontroverted proof thereof was produced, the burden rested on the plaintiffs to prove the fraud that they alleged. *Hodges* v. *Lassiter*, 96 N. C., 351; *Brown* v. *Mitchell*, 102 N. C., 347. And it was incumbent upon them to prove not only the fraudulent intent of the grantor, but also the fact that the defendant (Mrs. King) had knowledge of that intent and participated in it, and his Honor so told the jury. We do not think there was any evidence from which the jury could have inferred either that King's intent was fraudulent or that his wife had knowledge of such intent, if it existed.

If it is true that the husband was embarrassed by debt at the time of the execution of the note and the deed in trust to secure it, and that he had little or no property except the house and lot conveyed, these facts, far from establishing any wicked or fraudulent intent on his part, seem rather to show that he was acting most properly and commendably when he delivered to his wife this security for the repayment of the money he then borrowed from her. If the debt was an honest one, as is conceded, the securing of it under the circumstances was most commendable.

Nor does the fact that the other creditors of King, witnesses on the trial, knew nothing of the debt due from him to his wife, and of the deed in trust to secure that debt, tend at all to establish the fraudulent intent or the guilty knowledge. It was no part of their duty to tell to others their resources or liabilities.

NADAL v. BRITTON.

Nor can the withholding of the deed from registration, from its date in 1887 to 1891, be considered as evidence of a fraudulent intent under the circumstances of this case. The *bona fides* of the debt being admitted, and the execution and delivery of the deed in trust being established, this fact lost its significance. From the circumstance that the deed was not registered when it was executed, nor for so long a time afterwards, the jury might have inferred, if that question had been before them, that the debt was fictitious. But, in the absence of any allegation to that effect, and after the execution of the deed had been fully proved, the failure to promptly register her deed was of no importance in this controversy, as there was no evidence at all that, while so withholding her deed from registration, she induced any one to give credit to her husband upon the faith of his being the absolute owner of the property on which she now claims her lien. Indeed, it seems from the testimony of two of the plaintiffs that she did not know that her husband owed any debts, for she told them, when they visited him in his last illness, that he owed nothing, and therefore it would not be necessary to sell the house and lot which she wished her daughters to have. This expression might perhaps tend to show that her debt was fictitious, but the debt being admitted, it certainly does not tend to show that she had knowledge that her husband, when he borrowed her money and secured its repayment by a deed in trust, was contriving to hinder, delay or defraud his creditors, present or future.

But the jury have only found that the deed was made with intent to hinder, delay or defraud creditors; they have not found that Mrs. King had knowledge of that fraudulent intent. Without such a finding by the jury no judgment should have been rendered against her.

Error.                              New Trial Awarded.