## J. E. PAULSON & CO. *vs.* G. A. WARD, *et al.*

Opinion filed March 19th, 1894.

### Creditors Bill—Allegations.

A complaint in equity which alleges that the grantors in a certain conveyance were insolvent, and were being pushed by their creditors, and that such conveyance was without consideration, and wholly voluntary, and made with intent to hinder, delay, and defraud the creditors of the grantors, sufficiently sets forth the facts constituting the fraud.

### Defective Complaint Cured by Finding.

When a complaint is defective by reason of the omission of a certain allegation, not jurisdictional, but is not objected to on that ground, and evidence of the omitted fact is introduced without objection, and the court finds that such omitted fact existed, the defect in the complaint cannot be urged in the appellate court for the first time.

### Action in Aid of Legal Process—Execution.

Equity clearly recognizes an action in aid of a legal process, which action, while closely allied to a creditor's bill proper, is clearly distinct therefrom, and in such action it is not necessary that an execution be issued, and returned *nulla bona.* As the purpose of the action is to procure the removal by a court of equity of obstructions that hinder the enforcement of the legal process, the execution should be levied upon the property, and remain outstanding until equity removes the impediments.

### Conveyance to Secure Honest Debt Not Fraudulent.

In order to set aside a conveyance of land, as a fraud upon creditors, it is not sufficient to show that the grantors intended by the conveyance to hinder, delay, and defraud their creditors, or that the grantee knew of such intent on the part of the grantors, or knew that such must be the necessary result of the conveyance, when the sole object of the grantee was to secure an honest indebtedness owing to him from the grantors.

### Fraud by Grantee—Evidence Sustains Finding.

Evidence in this case *held* sufficient to sustain a finding that the grantee participated in the fraudulent intent to hinder, delay, and defraud the creditors of the grantors.

Appeal from District Court, Traill County; *McConnell,* J.

Action by John E. Paulson and P. S. Peterson, co-partners as J. E. Paulson & Co., against J. A. Ward and others. Judgment for plaintiffs, and defendants appeal.

Affirmed.

*J. F. Selby,* (*M. A. Hildreth,* of counsel,) for appellant.

The complaint is insufficient, it simply avers that the transfer was fraudulent. It should allege the facts and circumstances of the fraud. *Kinder* v. *Macy*, 7 Cal. 206; *Harris* v. *Taylor*, 15 Cal. 348; *Meeker* v. *Harris*, 19 Cal. 280; *Kent* v. *Snyder*, 30 Cal. 667; *Jones* v. *Massey*, 79 Ala. 370. The rule is universal that before a creditor's bill can be filed, an execution must have been returned *nulla bona*. The fact that the writ has been issued and returned unsatisfied is not sufficient, the return must show as a reason for its being unsatisfied that the officer could find no property whereon to make a levy. *Buckeye Engine Co.* v. *Donan Brewing Co.*, 47 Fed. Rep. 6; *Baskam* v. *Neff*, 47 N. W. Rep. 1132; *Taylor* v. *Bowker*, 28, L. Ed. 368; *Webster* v. *Clarke*, 25 Me. 313. The mere fact that the grantor remained in possession for a time does not show that the property is held in trust for him. *Verner* v. *Verner*, 1 So. Rep. 52; *Scott* v. *Davis*, 20 N. E. Rep. 139; *Stewart* v. *Mills County Bank*, 41 N. W. Rep. 318. A creditor who receives a conveyance from his debtor in good faith, without intent to defraud will be protected. *Rockford Boot & Shoe Co.* v. *Mastin*, 39 N. W. Rep. 219. To render a conveyance void for fraud upon creditors, the grantee must be shown to have knowledge of and in some way participated in the fraud. *Frazier* v. *Passage*, 30 N. W. Rep. 334; *Wood* v. *Elliott*, 7 S. W. Rep. 624. A debtor may give preference to certain creditors. 4654 Comp. Laws. *Oppenheimer* v. *Halss*, 4 S. W. Rep. 562; *Rothell* v. *Grimes*, 35 N. W. Rep. 392; *Bank* v. *Riddell*, 2 N. Y. Supp. 331; *Talbotts Assignee* v. *Ewalt*, 7 S. W. Rep. 631; *Vincent* v. *McAlpine*, 9 S. W. Rep. 165; *Horton* v. *Fancher*, 14 Hun. 172; *First National Bank* v. *Rinnour*, 27 Pac. Rep. 159; *Sutton* v. *Dana*, 25 Pac. Rep. 90. There is no allegation in the complaint that at the time of the transfer, the defendants were insolvent or that they had not sufficient property remaining to pay their debts. *Sell* v. *Bailey*, 21 N. E. Rep. 338.

*Carmody & Leslie*, for respondents.

The allegations in the complaint were sufficient. *Durant* v. *Pierson*, 8 N. Y. Supp. 904; *Union National Bank* v. *Reed*, 12 N. Y. Supp. 920; Bump on Fraudulent Conveyances, 553; *Garesche* v.

*MacDonald*, 15 S. W. Rep. 379. The appellant did not in the court below make the point that the complaint does not allege that defendants had not sufficient amount of property remaining after the alienation of the property to pay their debts, and they cannot raise the question for the first time on appeal. *Village* v. *G. N. Ry. Co.*, 52 N. W. Rep. 913; *Waterhouse* v. *Block*, 54 N. W. Rep. 342; *Doherty* v. *Holiday*, 32 N. E. Rep. 315; *Hanson* v. *Miller*, 32 N. E. Rep. 548; *Reed* v. *Nixon*, 15 S. E. 416; *Benton* v. *Beattie*, 22 At. Rep. 186; *Martyn* v. *Larmar*, 39 N. W. Rep. 285. An objection on a specified ground is a waiver of all other grounds and a general objection will be considered as limited to the specific ground mentioned or pointed out. *Floyd* v. *State*, 2 So. Rep. 683; *Garrett* v. *Trabue*, 3 So. Rep. 149, The sheriffs return was sufficient. *Daskam* v. *Neff*, 47 N. W. Rep. 1132. If the evidence shows that issuing an execution would be of no avail, none need be issued or returned. *Town* v. *Smith*, 16 N. E. Rep. 812; *Eiler* v. *Crull*, 14 N. E. Rep. 79; *Mason* v. *Pierson*, 63 Wis. 239. When a person is insolvent any transfer by him which reserves to him an interest in the property transferred, which is not shown by the transfer is fraudulent. *Newel* v. *Wagner*, 44 N. W. Rep. 1014; *North* v. *Belden*, 13 Conn. 376; *Butts* v. *Peacock*, 23 Wis. 359; *Dean* v. *Skinner*, 42 Ia. 418; *Young* v. *Hermans*, 66 N. Y. 374. Any secret reservation of a valuable right to the grantor renders an absolute conveyance void as to existing creditors. *Strong* v. *Lawrence*, 58 Ia. 55; *Simms* v. *Gains*, 64 Ala. 392.

BARTHOLOMEW, C. J. This action was brought by the present respondents in aid of an execution issued upon a judgment in their favor, and against the property of G. A. Ward and Jessie S. Ward and H. H. Hall. The aid which is asked at the hands of a court of equity consists in setting aside two real estate conveyances; one made by the Wards—who are husband and wife—to the defendant Patterson, the other made by Hall, who is the son of Jessie S. Ward, to Patterson. The District Court granted the relief prayed, and defendants appeal. We will discuss the points

in the order in which they are presented in the able brief of appellant's counsel.

It is first urged that the complaint does not set forth sufficient facts and circumstances of the fraud alleged to sustain an action for equitable relief. It is true that a bald statement that a transfer is fraudulent, or that it was made and received with intent to hinder, delay, and defraud the creditors of the grantor is not sufficient. The facts that enter into the transaction and impart its fraudulent character must be stated. The statement in this case is somewhat meager, but, we think, sufficient. The complaint avers "that, as they (plaintiffs) are informed and believe, the defendant Daniel Patterson never really and in truth purchased said real estate, or any part thereof, and that he never paid any consideration for the said deeds of said land, but that said deeds were wholly voluntary and without consideration." And this was followed by the allegation of intent upon the part of all the defendants to hinder, delay, and defraud the creditors of the Wards and Hall. The voluntary character of the transfer, coupled with the insolvency of the grantors, as pleaded, and with the fact that creditors of the grantors were pushing their claims to judgment, if true, rendered the transfer necessarily fraudulent as to such creditors.

Next, it is urged that the complaint does not allege that the debtors had not sufficient property remaining to pay their debts after the alienation. The allegation of lack of other property is contained in the complaint, but it is claimed that it refers to the time of the commencement of this action, and not to the time of the alienation. This is undoubtedly true, but when we look at this objection to the complaint, as urged in the trial court, we find it runs: "For the further reason that it (the complaint) does not state sufficient facts, or allegations that may be construed to be facts, that at the time of the commencement of this action the defendants did not have property out of which their demands might have been satisfied." The objection that is now urged is not the objection that was made below. Had it

been made, undoubtedly the complaint would have been amended to cover the point, as evidence was introduced without objection on this point to show that the grantors were insolvent at the time the deeds were executed, and the court finds "that neither of the defendants Ward and Hall were possessed of any property, real or personal, on said 20th day of December, 1888 (date of transfer,) or have been since that date, save such as were covered by such deeds or chattel mortgages, or chattel mortgages subsequently issued to said Patterson, and from which an execution could be collected." The evidence showed, without substantial conflict, that all real estate owned by the debtors was transferred to Patterson on December 20, 1888, and all personalty then owned by them was mortgaged to Patterson on that date, and all personalty subsequently acquired was so mortgaged as soon as received. Under these circumstances this objection cannot be urged in this court for the first time. See *Martyn* v. *Larmar*, 75 Iowa, 235, 39 N. W. 285; *Waterhouse* v. *Black*, (Iowa) 54 N. W. 342; *Benton* v. *Beattie*, 63 Vt. 186, 22 Atl. 422; *Reed* v. *Nixon*, 36 W. Va. 681, 15 S. E. 416; and the copious citiation of authorities in note to § 470, Elliott, App. Proc.

But a further point is made that equity is without jurisdiction in this case, because it is not shown that an execution had been issued on the judgment in favor of plaintiff, and returned *nulla bona*. This purely formal requirement is a necessary condition precedent to the right to file a creditor's bill proper. *McElwain* v. *Willis*, 9 Wend. 548; *Crippen* v. *Hudson*, 13 N. Y. 161; *Dunlevy* v. *Tallmadge*, 32 N. Y. 457; *Adsit* v. *Butler*, 87 N. Y. 585; *Taylor* v. *Bowker*, 111 U. S. 110, 4 Sup. Ct. 397. But we are convinced that, for two sufficient reasons, the point is not applicable in this case. Respondents seem to have acted with caution, and advisedly. The complaint is dated January 15, 1891. It is alleged, and so found by the court, that on the 27th day of December, 1890, an execution was duly and properly issued upon the judgment that the respondents had obtained against the Wards and Hall and placed in the hands of the sheriff of the proper county, being the county

wherein the real estate in controversy is situated, and in which all the said debtors resided, and that on January 3, 1891, the said sheriff made his return on said execution, stating that he had made diligent search, and could find no personal property in his county belonging to the said defendants in the execution, or any of them, upon which he could levy such execution, and no real estate belonging to said defendants, or either of them, except the real estate in controversy; that he levied said execution upon said real estate, but was requested by plaintiffs' attorneys not to sell the same until the determination of an action to be instituted to remove the obstacles in the way of such sale. The execution was returned entirely unsatisfied. This was, under the circumstances, equivalent to a return *nulla bona*, and would have furnished jurisdiction for a creditor's bill. But on January 13, 1891, an alias execution was issued on the judgment, and placed in the hands of the sheriff, who on the same day indorsed thereon his inability to find any personal property belonging to the defendants therein upon which to levy such execution, and thereupon levied upon the real estate in controversy, and still holds the same under the levy. It is in aid of this alias execution that this action is brought. In such an action it is neither necessary or proper to show a return *nulla bona*. The execution should remain outsanding, particularly where the property is personalty whereon a lien exists only by virtue of the levy, and it can do no harm, and is the better practice in any case. The action is not strictly a creditor's bill. That action is intended to discover assets, and to reach equitable and intangible estates and interests that could not be reached by the common law process, and also to set aside fraudulent conveyances. The action in aid of legal process, while closely allied to the credior's bill proper, is yet clearly distinct. It is never employed to discover assets or to reach intangible assets. It can only be employed where there are tangible assets, in their nature subject to execution, and upon which the plaintiff has obtained a specific lien. Where that lien depends upon the levy of execution, a return of the execution would of course

destroy the lien; hence, it is generally said in these cases that the execution must remain outstanding. When a court of equity has removed the obstruction or incumbrance that prevents a proper enforcement of the lien, then satisfaction is had through the process from the law court. This remedy is not exclusive. A party may proceed to sell under the levy, and the purchaser subsequently take the proper steps to obtain possession. But equity does not consider the legal remedy adequate in these cases, because a sale under such circumstances necessarily tends to a sacrifice of the property. To prevent that, equity will interfere before the sale, and brush away the obstructions. We think these views fully sustained by the New York cases cited *supra*, and *Newman* v. *Willetts*, 52 Ill. 98; *McKinney* v. *Bank*, 104 Ill. 180; *Webster* v. *Clark*, 25 Me. 313; *Zoll* v. *Soper*, 75 Mo. 460; *Pashby* v. *Mandigo*, 42 Mich. 172, 3 N. W. 927; *McKenna* v. *Crowley*, (R. I.) 17 Atl. 354; *Cornell* v. *Radway*, 22 Wis. 260.

Lastly, a reversal is claimed on the ground that the evidence does not support that finding of fact made by the trial court wherein it is found that the defendant Patterson, the grantee in the conveyances, participated in the intent and purpose to hinder, delay, and defraud the creditors of the Wards and Hall. We had occasion very recently, in the case of *Jasper* v. *Hazen*, 58 N. W. 454, to announce the extent to which the court would go in reviewing the facts in cases tried by the court under the power of review conferred by § 5237, Comp. Laws. In testing the sufficiency of this evidence, we concede that, in order to set aside these conveyances as against Patterson, the grantee, it is not sufficient to show that the grantee knew that the object of the grantors in making the conveyance was to hinder, delay, and defraud their creditors, or that such must necessarily be the result of such conveyances, provided the sole object of the grantee in taking the conveyances was to secure an honest indebtedness owing by the grantors to him. *Cooper* v. *Bank*, (Ala.) 11 South. 760; *Nadal* v. *Britton*, (N. C.) 16 S. E. 914; *Young* v. *Clapp*, (Ill. Sup.) 32 N. E. 187; *Bannister* v. *Phelps*, 81 Wis. 256, 51 N. W. 417 It is claimed that such was the case in this instance.

The following facts are admitted, or proved too conclusively to question: On December 12, 1888, respondents began an action against the Wards and Hall to recover the amount then owing by said parties to respondents. Judgment was obtained January 18, 1889, and it was upon this judgment that the executions heretofore mentioned were issued. On December 20, 1888, after respondents' action was brought, but before judgment, the Wards deeded to Patterson, by deed absolute on its face, about 1,000 acres of land. The consideration named in the deed was $25,000. The land was worth $20,000. At the same time Hall deeded to Patterson 320 acres of land for the express consideration of $8,000. The land was worth $6,400. At the same time the Wards and Hall joined in a chattel mortgage to Patterson covering all their personalty, and all crops to be grown on the land transferred, for a series of years. This mortgage was given to secure notes of same date, maturing one each year for eight years, the aggregate amount being $49,080. The notes drew no interest. These conveyances were immediately placed of record. While the deeds were absolute on their face, they were in fact accompanied by a defeasance, which was not recorded. The deeds were intended as security for the sum of $30,000, and the chattel mortgage was given to secure the same debt, and nothing else. This sum Patterson agreed to furnish in the following manner: The Wards and Hall were at that time owing Patterson $13,932; and Patterson assumed other indebtedness of said parties, amounting to about $14,778, and the balance of $1,290 was to be paid in cash. This arrangement rested in parol, and respondents had no knowldge of its existence. The debts so assumed by Patterson were all liens upon the lands transferred, being either in judgment or secured by mortgages. The Wards and Hall were clearly insolvent, and their creditors were pushing them. Within a very short period after these transfers were made, judgments were entered against them amounting to over $6,000. It is perfectly clear that if they intended to remain in control, and have the use of this large property, they must get it beyond the reach of execution.

They provided for such debts as were liens by giving security on all their property, but did it in such a manner as to make their indebtedness appear much larger than it was in fact, and their assets much smaller.   There is left little opportunity to doubt the intent on the part of the grantors to hinder, delay, and defraud their creditors.   Did the grantee Patterson know of that intent when he took the conveyances?   The trial court answers in the affirmative.   There is in this case a large accumulation of documentary evidence, introduced as exhibits.   Of the probative force and effect of these instruments we may be in as good position to determine as the judge who presided at the trial.   But this particular question rests in the parol evidence and the surrounding circumstances.   As we held in *Jasper* v. *Hazen*, we cannot disturb a finding of a trial court that is based upon parol evidence, where that court had the many advantages that flow from a personal observation of the witnesses, unless such finding is clearly against the preponderance of the testimony.   In solving this particular question, much depends upon whether or not Patterson was chargeable with the knowledge of one Hanson, through whom the negotiations were made.   The trial court finds that Hanson was the agent of Patterson.   Appellants claim that the evidence does not so show, but does show that he was the agent of the Wards and Hall.   Hanson was a witness for appellants, and testified that he procured the loan for Ward; that he tried to procure it from other parties besides Patterson.   He does not say that Ward ever employed him for that purpose, or ever paid or promised to pay him.   Patterson says he did not employ Hanson, but yet Hanson frequently drew papers for him.   The evidence shows that Hanson and Patterson had business connections at that time; had such connection before that time, and have had since, the exact nature of their business relations at that time is not disclosed.   It certainly must have been close and confidential if, as Patterson swears, Hanson frequently drew papers for him without any request or employment on his part.   We are not prepared to believe that Hanson was conducting these negotiations

without expectation of benefit, directly or indirectly, to himself. The grantors were compelled to account for every dollar received by them from the crop of 1888, and each succeeding year to the trial. It does not appear that they ever paid Hanson anything. *Further*, it is undisputed that Hanson placed the papers of record for Patterson, and that, in the furthur transactions in extending or paying the mortgages and judgments, Patterson assumed Hanson acted for him; and more than $10,000 of the indebtedness held by Patterson against the grantors at the time of the transaction was originally secured by mortgage running to Patterson and Hanson jointly. Certainly, this finding of the trial court is not against the preponderance of the evidence.

It is undisputed that Hanson was fully acquainted with the financial stress of the grantors. He had talked with respondents about their claim, and had suggested paying them 50 cents on the dollar. He knew the grantors were insolvent, and that they could not continue in business unless they could place their property beyond the reach of execution. Patterson is chargeable with this knowledge. But, aside from Hanson's knowledge, it is incredible that a capitalist,—a banker,—who had been doing business with certain clients for years, and had loaned them $14,000, did not fully understand their financial condition. We believe Patterson understood it as fully as Hanson, and, so understanding it, he must have known the intent with which they made the transfer. Did he receive the conveyances for the purpose of aiding to any extent in carrying out that intent? An examination of the exhibits must answer this question. It is urged, and he so testifies, that he sought to get security, for what was owing him. But it does not appear that he ever complained of his security. He was not the moving party. It was the grantors. He did not solicit them for more security, but they solicited him for money to take care of their secured debts. Moreover, without stopping to make the demonstration, it is certain from the figures that he in no manner improved his security, nor could any man of business prudence have regarded it as an improvement. That could

not have been his purpose. Was it a good faith loan made by a capitalist solely for the purpose of placing his funds at interest? The deeds which were given for security only were absolute in form. The defeasance was separate. The deeds were recorded. The defeasance was not. Any creditor searching the record would have seen that the grantors had disposed of all their realty. At the trial no explanation was offered to show why the transaction took that form rather than the usual form of mortgage, which would have developed in one instrument the true character of the deal. This circumstance itself has been held a sufficient evidence of fraud to warrant a cancellation of the conveyance as against the grantee (*North* v. *Belden*, 35 Am. Dec. 83,) and there is much persuasiveness in the argument that the grantee in such a case actively participates in deceiving the creditors of the grantors to their prejudice. We do not hold in this case that such fact constitutes fraud on the part of the grantee, but, in connection with the other facts, it is of force.

A number of the mortgages and judgments assumed by Patterson have been paid, and satisfactions thereof executed and delivered to Patterson. In several instances these satisfactions were withheld by Patterson from the records. As already stated, the contract by which Patterson assumed these obligations rested entirely in parol. On the records they still stood as the absolute debts of the grantors. The chattel mortgage executed at the same time formed a part of the same transaction, and is a proper matter to be considered as throwing light upon the purpose of the grantee in receiving the deeds. That mortgage was for $49,080. The real debt was $30,000. From the proceeds of the sales of property covered by this mortgage, after the execution of the mortgage and prior to the date of the trial below, about $34,000 were realized. The greater part of this money was deposited in the bank of which Patterson was president, and what was not so deposited was deposited with Hanson, who was acting for Patterson. Of this amount, $12,573 had been applied on the indebtedness secured, leaving a balance of about $4,000, then

overdue of the money so deposited.   Of the money so deposited, $21,933 were checked out by Ward, and used by him in paying farming and ordinary household and family expenses. This was not only done with Patterson's knowledge, but on more than one occasion, when Ward's account at the bank was overdrawn, Patterson deposited his personal check to Ward's credit, in order to balance the account.   Of course this points unmistakably to an understanding between the parties, by which there was such a secret reservation in favor of the mortgagors as renders the chattel mortgage void, under the circumstances under which this mortgage was given. *Newell* v. *Wagness*, 1 N. D. 62, 44, N. W. 1014, and cases there cited; also *Bank* v. *Holdredge*, (Wis.) 55 N. W. 108; *Gillespie* v. *Cooper*, (Neb.) 55 N. W. 302. And while, as to the chattel mortgage, the fraud might be a matter of legal presumption, we think the facts of the entire transaction clearly show actual fraud on the part of all the respondents.   The Wards and Hall were, in fact, the owners in fee of 1,360 acres of land, worth $27,300, and of personal property worth $8,000, making their total assets $35,250. They owed Patterson $30,000, and owed unsecured debts to various persons, including these respondents, amounting to about $6,000.   There total liabilities exceeded their assets by less than $1,000.   But the record showed an absolute sale of all their realty, leaving their total assets at $8,000.   It showed an existing indebtedness to Patterson of $49,080, unsecured judgments, about $6,000, and on the mortgages and judgments that Patterson had assumed by parol, and some of which were paid and not satisfied of record, about $10,000 more, making their total liabilities over $65,000, and showing an excess of liabilities over assets of $57,000.   When it is remembered that this condition is reached by placing of record whatever would show diminished assets and increased liabilities, and withholding from record whatever would show diminished liabilities and increased assets, the mind is irresistibly led to the conclusion that there was a purpose in so doing, and that such purpose was to hinder, delay, and defraud the creditors of the Wards and Hall.   As Patterson

was in a large measure directly responsible for this condition of the record, it is clear that he participated in the purpose. The judgment of the District Court is in all things affirmed. All concur.