S. J. RASMUSSEN, Appellant, v. H. C. CHAMBERS, Defendant, and SECOND NATIONAL BANK OF MINOT, NORTH DAKOTA, a Corporation, Garnishee, and ESTELLA M. SMITH, Interpleaded Defendant-Respondent.

(204 N. W. 178.)

**Fraudulent conveyances — blood relation between parties to conveyance does not warrant conclusion that transaction is fraudulent.**

1. While the court will carefully scrutinize transactions between persons

---

Note.—(1) Effect of relationship of parties to fraudulent conveyance, see 12 R. C. L. 489; 2 R. C. L. Supp. 1435; 4 R. C. L. Supp. 759.

(3) Review of findings by trial court, see 2 R. C. L. 203; 1 R. C. L. Supp. 442; 4 R. C. L. Supp. 91; 5 R. C. L. Supp. 81.

of close blood relation in actions wherein alleged fraudulent conveyances are involved, such blood relation does not warrant a conclusion that the transaction is fraudulent; and a transfer of real property by a brother to his sister in payment of a bona fide indebtedness is a valid transfer under § 7218 Compiled Laws of 1913.

**Findings — findings of fact and conclusions of law found by trial court justified.**

2. An examination of the evidence in this case, for reasons stated in the opinion, justifies the findings of fact and conclusions of law found by the trial court.

**Appeal and error — findings of trial court not to be disturbed unless against preponderance of evidence.**

3. The findings of the trial court in an action at law where a jury trial has been waived are presumptively correct, and will not be disturbed unless shown to be clearly against the preponderance of the evidence.

Op'.don filed May 2, 1925. Rehearing denied May 25, 1925.

Appeal and Error, 4 C. J. § 2722 p. 775 n. 26; § 2727 p. 777 n. 61; § 2857 p. 887 n. 62. Fraudulent Conveyances, 27 C. J. § 153 p. 495 n. 58; § 227 p. 534 n. 44; § 365 p. 617 n. 8; § 407 p. 642 n. 51, 57; § 775 p. 827 n. 99, p. 828 n. 11 New. .

Appeal from District Court, Ward County, *Moellring,* J.

Plaintiff has appealed from the judgment of the District Court of Ward County.

Affirmed.

*F. B. Lambert,* for appellant.

"In a proceeding against a husband as debtor and his wife as garnishee plaintiff can show that a judgment in favor of the wife and on which the husband had made payments was based on no consideration and was fraudulent as to creditors; garnishment being in the nature of a creditor's bill under Revised Statutes Section 3220, every judgment suffered with intent to hinder, delay or defraud creditors being void as against such creditors." Bloodgood v. Meissner (Wis.) 54 N. W. 772.

"As garnishment . . . may perform the office of a creditor's bill it is quite evident that a fraudulent judgment may be attacked by it." Bank v. Wilson (Wis.) 43 N. W. 153; Bump, Fraud. Conv. 3d ed. 521.

"Where claimants of the debt or property have been summoned and made parties to the garnishment proceeding their rights are then litigated the same as in any other action and the question as to whether the debt or property belongs to them or the principal defendant should be tried on the evidence produced by the respective parties." 20 Cyc. 1134.

"It is not necessary for the plaintiff to allege fraud in his pleading any where, but evidence of the facts may be given on the trial." Rood, Garnishment, § 78.

"In this, as in other proceedings when the facts are undisputed, fraud is a conclusion of law from the facts proved." Rood, Garnishment, § 79.

"Garnishment is an appropriate proceeding in which to test the *good faith* and validity of an alleged assignment and by it the plaintiff is placed in a position to question both." Rood, Garnishment, § 75.

The above citation is sustained by a long list of authorities contained in the note from Minnesota, Wisconsin, Michigan, Indiana, Iowa, Colorado, Nevada and the Federal Courts.

"Any person holding property in fraud of the defendant's creditors may be charged as garnishee therefor, although the defendant could maintain no action against him." Rood, Garnishment, § 67.

"On the interposition of a claim by a third person in garnishment proceedings such claimant must rely on the strength of his own title and cannot rely on or avail himself of any defects or irregularities in the garnishment proceedings or contest the garnishee's liability." 20 Cyc. 1135.

"The *affirmative* in maintaining his right to garnishment property is upon the claimant who comes into the garnishment proceedings." North Star Boot & Shoe Co. v. Ladd (Minn.) 20 N. W. 334.

"The burden was on claimant holding subcontractor's orders on the contractor and garnishee to plead and prove that the fund belonged to them as against the plaintiff." Mattocks v. Curtis (Minn.) 167 N. W. 424.

"Rights of equitable claimants to funds involved in garnishment proceedings will be protected in such proceeding." Hector v. Plumley, 38 N. D. 147, 164 N. W. 698.

"The burden rests on the claimant." Jackson v. People (Mich.) 79 N. W. 908; Burman v. Holm (Mich.) 78 N. W. 653.

"The ultimate issue on intervention or interpleader of adverse claimants in garnishment is the ownership of the garnished property or credit." 29 C. J. 380.

"The claimant must rely on the strength of his own title and not upon the weakness of the defendant's title." 28 C. J. 381.

"The burden is on the grantee asserting the title to prove such constructive delivery and on failure so to establish, by proof, the deed will be adjudged invalid for want of delivery." Mogoffin v. Watros (N. D.) 178 N. W. 134.

"Where confidential or fiduciary relations between the parties are shown the burden of showing good faith in the transaction is upon the grantee." Grace v. Callahan (Iowa) 178 N. W. 520.

"Inadequacy of consideration is a fact calling for explanation and it is a badge of fraud." 20 Cyc. 441.

"Especially is this true when such inadequacy is gross" (as is a fact in the case at bar). 20 Cyc. 441.

"The fact that a conveyance is withheld from the record or is otherwise concealed is a badge of fraud." 20 Cyc. 446.

"Where a debtor transferred his property so as to secure a benefit to himself at the expense of his creditors the transfer is fraudulent and void as between them." Howe Mach. Co. v. Clayborne, 6 Fed. 438; Kellogg v. Richardson, 19 Fed. 70; Pacific Nat. Bank v. Windram, 133 Mass. 175; Spotten v. Keller, 12 N. Y. S. R. 385.

"Where the grantor in an absolute conveyance retains an absolute interest in the property conveyed it is a badge of fraud." Wyman v. Brown, 30 Atl. 71.

"Where property double the value of the debt is conveyed by an insolvent in such a way that the grantors still retain a certain degree of supervision over it the conveyance is fraudulent and void." Bigelow v. Stringer, 40 Mo. 195.

"Consent by the mortgagee for the mortgagor to sell property for his own benefit raises a presumption of fraud." Greeley v. Winsor (S. D.) 36 Am. St. Rep. 720, 55 N. W. 325.

"Where a transfer is made to another to sell and pay off creditors such as has been done in this case it is held that this is fraud and void

as to such creditors." Hall v. Feeney (S. D.) 21 L.R.A.(N.S.) 513, 118 N. W. 1032.

"The giving of an absolute conveyance which is intended to operate only as security is held to be a badge of fraud and such a conveyance is *conclusively* fraudulent as to existing creditors." Beidler v. Crane, 135 Ill. 92, 25 Am. St. Rep. 349, 25 N. E. 655.

*Campbell & Funke,* for respondent.

"While the relation existing between a bank and a depositor is that of debtor and creditor, so that the fund may be reached by garnishment, this is so only when the funds deposited are in fact and in law the funds of the depositor, and not where the funds, though deposited in the name of the depositor, are not the funds of such depositor." Lambert v. Military Ridge (Wis.) 191 N. W. 555.

"The burden of proving fraud is on the party alleging it, whether the allegation be negative or affirmative in form." Tompkins v. Nichols, 53 Ala. 197; Compton v. Marshall (Tex.) 29 S. W. 1059; Burt v. Timmons (W. Va.) 6 Am. St. Rep. 664; Nelson v. Badker (S. D.) 163 N. W. 569; Wannemacher v. Merrill, 22 N. D. 46, 32 N. W. 412.

"Where issue is joined between the plaintiff and the claimant, the general rule is that upon the trial thereof, the burden is on the claimant to prove the validity of his assignment or the superiority of his title." 20 Cyc. 1135.

"The burden is upon the plaintiff to show that at the time of the execution of the alleged fraudulent conveyance, the defendant was insolvent." Wannemacher v. Merrill, 22 N. D. 46.

"The existence of the relationship between the parties to an alleged fraudulent conveyance does not remove from the plaintiff the burden of proving fraud." First Nat. Bank v. Mesning, 46 N. D. 184.

The party alleging fraud must prove the same by evidence that is clear and convincing. Englerd v. Dale, 25 N. D. 587; McKillit v. Farmers State Bank, 29 N. D. 541.

A fraudulent intent in the transfer of real estate must be made to appear in order to justify a court in setting the conveyance aside as fraudulent as to creditors. Dalrymple v. Security L. & T. Co. 9 N. D. 306.

A debtor in failing circumstances may pay or secure one creditor to the exclusion of others. Jewett v. Downs (S. D.) 60 N. W. 76.

A debtor has a right to prefer one creditor as against another; and a conveyance received by the creditor in good faith for that purpose is valid. Lockren v. Rustan, 9 N. D. 43, 81 N. W. 60.

An insolvent debtor may pay one or more creditors in preference to others, altho all his property is used in making such payment. Cutter v. Pollock, 4 N. D. 205, 59 N. W. 1062.

A conveyance in satisfaction of a pre-existing indebtedness, of only so much property as is reasonably necessary to satisfy the debt, received in good faith for such purpose, is not fraudulent as to creditors altho the grantee knows that the grantor is actuated solely by a desire to defraud his other creditors. Lockren v. Rustan, 9 N. D. 43, 81 N. W. 60.

BURKE, J. On the 3rd day of December, 1901, Harry O. Chambers of Fessenden, Wells county, North Dakota, made and executed his will, by the terms of which he bequeathed to his sister Mrs. Robert M. Smith, the interpleaded defendant in this case known as Estella M. Smith, and to her children, the sum of $10,000.00. The will provided that a part of this sum should be invested in a home for Mrs. Robert M. Smith and her family and after the purchase of such home the balance was to be invested in real estate or other good and secure investments, the interest from which was to be used for the support of Mrs. Robert M. Smith and her family, and that on the death of the said Mrs. Smith the estate should go to her children. All of the balance of his property was willed to his brother H. C. Chambers. H. C. Chambers was appointed in the will, by the testator, as executor without bond. Upon the death of Harry O. Chambers, the will was duly filed in the office of the judge of the county court of Wells County on February 14, 1902, and duly recorded in Book One of the will records of said court. The said H. C. Chambers qualified as executor of the said estate and has been, during all of the time since, and is now, the executor of the said will.

In accordance with the provisions of said will the executor, H. C. Chambers, purchased for Mrs. Estella M. Smith a home in Latrobe, Pennsylvania, for the sum of $1600.00. He invested the balance of

the $10,000.00 so devised in real estate, and paid to Mrs. Smith inter-
est amounting to 7% per annum on said balance up to 1914, since
which time, on account of the failure of crops, he has not been able to
pay Estella M. Smith anything under the terms of the will.    Mrs.
Smith, according to the testimony, has always lived in Pennsylvania,
but in the spring of 1919 she came to North Dakota to look after her
interests and while here she and H. C. Chambers, on the 19th day of
June, 1919, went to the office of Mr. Funke, and H. C. Chambers,
made, executed and delivered to her, in the presence of Mr. Funke and
another, a warranty deed for the NW¼ of Section 15, the SE¼ of Sec-
tion 9, the SW¼ of Section 10, the N½ SE¼ of Section 21, and the
W½ SW¼ of Section 22, Township 153 North, Range 82 West, which
land was part of the land purchased with the money left by the will.

The testimony of Mr. Chambers, Mr. Funke, and the deposition of
Mrs. Estella M. Smith is that this land was deeded to Mrs. Smith by
Mr. Chambers on account of his indebtedness to her under, and by
virtue of, the terms of the will.    In the testimony of Mr. Chambers it
appears that there were five other quarters of land deeded to Mrs.
Smith at the same time, one of which was thereafter sold and $1000.00
was realized, which went to pay taxes on the other quarters.    On this
land that was deeded to Mrs. Smith at the time there were mortgages
amounting to $24,500.00.

H. C. Chambers also deeded 240 acres of land to Malcolm Smith,
son of Estella M. Smith.    When he was asked about the consideration
he said that it was for money he owed Malcolm Smith for horses that
he had sold for him.    Malcolm Smith, a young man between 25 and 30,
enlisted in the war, and, while the record is not very clear, it appears
that when he went to war he left the horses with his uncle to be dis-
posed of.    The horses were sold for $700.00 or $800.00 and the land
was deeded to Malcolm Smith in payment.    There was a mortgage
against the land for $4500.00 with interest and taxes.

On the 21st day of October, 1920, Estella M. Smith executed a gen-
eral power of attorney to the defendant, H. C. Chambers, authorizing
him to sell and convey all of her lands, lease, and to do anything and
everything that was necessary in leasing or selling or managing the
land, and on the 24th day of October, 1922, Estella M. Smith made,
executed and delivered to H. C. Chambers a power of attorney specific-

ally authorizing him to sell the N$\frac{1}{2}$ SE$\frac{1}{4}$ of Section 21, and the W$\frac{1}{2}$ SW$\frac{1}{4}$ of Section 22, Township 153 North, Range 82 West, which power of attorney was executed at her home in Pennsylvania, forwarded and duly recorded in the office of the register of deeds of Ward county on the 26th day of December, 1922. On the 15th day of September, 1922, the defendant Estella M. Smith, by her attorney in fact, H. C. Chambers, made, executed and delivered to Abner L. Simpkins a contract for purchase and sale of the last described land in Ward County. On the 22nd day of December, 1922, Homer C. Chambers and A. L. Simpkins went to the Second National Bank in Minot, North Dakota, and into the private office of R. E. Barron, President, and told Mr. Barron that the said land had been sold to Mr. Simpkins and that the check was to be made payable to the order of Estella M. Smith, for $1341.30, and Mr. R. E. Barron then and at that time wrote the check, dated the 22nd day of December, 1922, "Pay to Estella M. Smith $1341.30" and in the left-hand corner Mr. Barron wrote; "Payment on contract, Albert Simpkins, for N$\frac{1}{2}$ SE$\frac{1}{4}$ Sec. 21 and W$\frac{1}{2}$ SW$\frac{1}{4}$ Sec. 22–153–82," which check was endorsed "Estella M. Smith by H. C. Chambers" and "H. C. Chambers."

The defendant H. C. Chambers says in his testimony that he had the money deposited in his account for convenience in paying taxes, and interest on the mortgages, on the lands of Estella M. Smith. R. E. Barron at said time made out a deposit slip for the amount of the check $1341.30, and then in his own handwriting wrote on the slip, "By A. L. Simpkins, the grantee in the contract of sale." Mr. Chambers testifies that he kept no books; that he filled out no deposit slips, and was very much confused between an account and deposit slips. But in his direct testimony he candidly says that while the money belonged to his sister, he put it in the bank in his name for convenience in checking in payment of taxes and interest on Mrs. Smith's land.

The plaintiff in this action had a judgment against the defendant H. C. Chambers for $2240.90, and on the 29th day of December, 1922, the plaintiff had an execution issued on the judgment, and the account, as deposited in the Second National Bank, was garnisheed. It is the contention of the plaintiff and appellant that the sale of the lands to Mrs. Smith was fraudulent and that the money deposited in the name

of H. C. Chambers belonged to him and was subject to garnishment in the bank.

The trial court was very liberal in the latitude allowed to both sides in the introduction of testimony. In fact, he required an answer to practically every question that was asked. At the close of the defendant's case the plaintiff moved for a directed verdict and at the close of the case both sides moved for a directed verdict and the court took it under advisement and thereafter made his findings of fact and conclusions of law in favor of the defendant, specially finding that the account of $1341.30 in the Second National Bank did not and does not belong to, and is not the property of the said H. C. Chambers but is the property of the interpleaded defendant Estella M. Smith, and that the interpleaded defendant was, on the 29th day of December, 1922, the owner of the N½ SE¼ of Section 21, and the W½ SW¼ of Section 22, Township 153 North, Range 82 West, and upon the findings and conclusions judgment was duly entered for the defendant, and plaintiff bases his right to recover upon the alleged fraudulent conveyance of, H. C. Chambers to Estella M. Smith on the 19th day of June, 1919, and more than three years before the deposit was made. Section 7223 Comp. Laws 1913 reads as follows:—

"In all cases arising under section 5599 or under the provisions of this chapter the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

H. E. Byorum, cashier of the said bank, made an affidavit of disclosure stating that they had money belonging to said H. C. Chambers in the sum of $1401.71 upon a general checking account. In support of their claim of fraud they introduce in evidence Exhibit No. 8 which purports to be a statement upon which the claim is made that $2000.00 was loaned. When this exhibit was shown to Mr. Chambers he testified that the signature was his and that Dahlin filled it out after it had been signed. Chambers signed with lead pencil and Dahlin with pen and ink. It is dated the 6th day of December, 1916, more than six years before the deposit was made and three years before the deed of the land from Chambers to Estella M. Smith was executed. In this statement there is 1280 acres of land in Wells county valued at $30.00 per acre, amounting to $38,400.00; 160 acres of land in Kidder county

valued at $20.00 per acre, amounting to $3,200.00; in Ward county 1720 acres of land at $30.00 per acre, amounting to $51,600.00; Jamestown property, $1800.00; personal property, $10,000.00; mortgages and notes, $4500.00; Canadian notes, $2000.00; Pennsylvania property, $2,700.00; Incumbrances against the Ward county land $14,-300.00; against the Wells county land, $5500.00.

The record shows that Mr. Rasmussen is a banker, a director in the Second National Bank of Minot and has been connected with it for many years, and connected with at least one other bank in Ward county. If there was anything false in this statement in regard to values Mr. Rasmussen would know it better than Mr. Chambers.

There is no evidence of fraud unless the transactions themselves are such that fraud can be inferred therefrom by the jury or the trial court. There is nothing in appellant's contention that the consideration was small for these lands were all mortgaged, apparently to the limit. Everything that Mr. H. C. Chambers did was done openly and aboveboard. He apparently did what banking he had to do with the Second National Bank. He knew the plaintiff and had known him for many years. He knew that he was a banker and a director in the Second National Bank in Minot. If he had wanted to perpetrate a fraud he would hardly have gone to the Second National Bank in Minot, knowing that the plaintiff was connected with it. He sent one power of attorney from Estella M. Smith to Mr. Barron, president of the bank, to have it recorded. He could have gone to any other bank; or he could have required Simpkins to get the cash.

There is no evidence that the defendant H. C. Chambers was insolvent at the time he deeded the land to his sister Estella M. Smith. In fact, there is no evidence that he was insolvent at the time of the commencement of this action or at the trial. He was asked on cross-examination, on page 73 of the record, what land he had in Ward County in his own name, and he answered: "I think two quarters." Question: "You have two quarters?" Answer: "I think there is." The record shows that there is a mortgage on the land and that the mortgage is being foreclosed but there is no evidence as to the amount of the mortgage or the extent of Chambers' equity therein. On cross-examination Chambers was asked about the sale of one of the quarters which he deeded to Estella M. Smith, and out of which $1000.00 was realized.

52 N. D.—42.

and he says: "I did not pay it out for taxes. Zuber done that. That is Zuber of Fessenden. I knew he was paying it out in taxes. She (meaning Estella M. Smith) sent me the notice back and he paid it for her. I sold the land, yes." This testimony is quite significant for it shows that Estella M. Smith was controlling the expenditure of the money in the payment of taxes on the lands deeded to her.

It is conceded that Harry O. Chambers made the will that was introduced in evidence together with records of the county court of Wells County showing its admission to probate; and that $10,000.00 was bequeathed in said will to Estella M. Smith; that $1600.00 of it was invested in the home in Latrobe, Pennsylvania, and the balance invested in farm lands as provided in said will; and that Estella M. Smith received the interest on the money invested in lands at the rate of 7% per annum until the year 1914. It is not denied that when one of the quarters of land deeded to Estella M. Smith was sold and $1000.00 realized from it that she authorized the payment of the $1000.00 on taxes and interest on the other lands, and that she has not received a cent out of the bequest since 1914, all of which is evidence of her good faith. Since there is a bona fide debt, under § 7218 Comp. Laws 1913 Chambers had the right to sell the land to his sister. "Section 7218. A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." And while dealings between relatives are scrutinized carefully, the fact that they are relatives is not sufficient to justify the conclusion of fraud. Conveyance of land by husband to wife without consideration while deeply in debt is not necessarily fraudulent. First State Bank v. O'Leary, 13 S. D. 204, 83 N. W. 45. That mortgagee is a brother of mortgagor is not evidence of fraudulent intent. Lane v. Starr, 1 S. D. 107, 45 N. W. 212. Conveyance with sole object to secure honest debt not fraud. Paulson v. Weel, 4 N. D. 100, 58 N. W. 792.

In the case of Ruettell v. Greenwich Ins. Co. 16 N. D. 547, 113 N. W. 1029, on the question of the weight that this court gives to the findings of the trial court, the court said:—"The weight to be given to the trial court's findings when that court is clothed with the same functions as a jury in determining questions of fact has often been before this court, and the following rule was laid down in an early case and

adopted in later decisions: 'Rather it intended, and such, we think, is the effect of the Wisconsin decisions, that, when a finding of fact made by the trial court was brought into this court for review upon proper exceptions, it should come like a legal conclusion, with all the presumptions in favor of its correctness, and with the burden resting upon the party alleging error, of demonstrating the existence of such error. He must be able to show this court that such finding is against the preponderance of the testimony, and, where the finding is based on parol evidence, it will not be disturbed unless clearly and unquestionably opposed to the preponderance of the testimony.' " Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717; Re Eaton, 4 N. D. 517, 62 N. W. 597; Feil v. Northwest German Farmers' Mut. Ins. Co. 28 N. D. 355, 149 N. W. 358.

The trial court heard the evidence. He saw the witnesses upon the stand. He gave to the plaintiff every possible opportunity to prove fraud. He had a better opportunity to judge of the credibility of the witnesses and the parties than has the members of this court and it is our opinion that the evidence in the case sustains the findings of fact and conclusions of law in favor of the defendant.

The decision of the lower court is affirmed.

CHRISTIANSON, Ch. J., and JOHNSON, NUESSLE, and BIRDZELL, JJ., concur.