MERCHANTS NATIONAL BANK OF WILLOW CITY, NORTH DAKOTA, a Corporation, and the First National Bank of Willow City, North Dakota, a Corporation, B. C. Schram as Receiver of the First National Bank of Willow City, North Dakota, a Corporation, and Axel Fred, Appellants, v. WILLIAM J. ARMSTRONG, David I. Armstrong, Mary Armstrong, James Armstrong, Thomas A. Armstrong, Mary Ann Atkinson, Arabella Rands, and any Other Person Unknown Claiming any Estate or Interest in or Lien or Encumbrance upon the Property Described in the Plaintiff's Complaint, Respondents.

(208 N. W. 847.)

**Appeal and error — trial court's findings are entitled to and should be given appreciable weight where trial de novo is demanded on appeal but not same as in cases not triable de novo.**

1. Where on appeal to the supreme court a trial de novo is demanded under § 7848, Comp. Laws 1913, as amended, the trial court's findings are entitled to and should be given appreciable weight, but they are not clothed with the same presumption of correctness as in cases not triable de novo in this court.

**Fraudulent conveyances — fraudulent intent must be established, burden is upon party attacking transfer.**

2. Fraudulent intent essential to avoid a transfer under § 7220, Comp. Laws 1913, must be established as a matter of fact under § 7223, Comp. Laws 1913,

---

Note.—(1) As to weight to be given to trial court's finding on appeal, see 2 R. C. L. 203; 1 R. C. L. Supp. 441; 4 R. C. L. Supp. 91; 5 R. C. L. Supp. 81; 6 R. C. L. Supp. 75.

(2) On burden of proof of fraudulent intent, see 12 R. C. L. 666; 2 R. C. L. Supp. 1467.

(3) Fraudulent transactions between relatives, see 12 R. C. L. 489; 2 R. C. L. Supp. 1435; 4 R. C. L. Supp. 759.

and the burden is upon the party attacking the transfer to establish such intent.

**Fraudulent conveyances — transactions between relatives not sufficient to establish fraud, such transaction should be closely scrutinized.**

3. Where a transaction which is challenged for fraud is between relatives, that fact alone is not sufficient to justify a finding of fraud, but such a transaction between relatives should be more closely scrutinized than where no relationship exists.

**Fraudulent conveyances — mortgages not subject to attack for fraud, if taken by mortgagees as security for bona fide debts, although they knew of fraudulent intent of mortgagor.**

4. Mortgages given by an insolvent debtor who intends thereby to defraud and delay his other creditors of their demands are not subject to attack for fraud where they are taken by the mortgagees solely as security for bona fide debts, although the mortgagees knew of the fraudulent intent of the mortgagor.

**Fraudulent conveyances — assignment of second mortgage by mortgagee to mortgagor's wife held fraudulent as to creditors.**

5. Record examined and held for reasons stated in the opinion that certain mortgages on real estate executed and delivered by the defendant W. J. Armstrong, are fraudulent and void under § 7220, Comp. Laws 1913.

Opinion filed April 9, 1926.

Appeal and Error, 4 C. J. § 2651 p. 728 n. 45, 46. Fraudulent Conveyances, 27 C. J. § 153 p. 495 n. 58; § 165 p. 501 n. 40; § 388 p. 630 n. 34; p. 631 n. 35; § 392 p. 633 n. 51; § 407 p. 642 n. 51; § 716 p. 790 n. 37; § 726 p. 799 n. 42; § 770 p. 821 n. 39.

Appeal from the District Court of Bottineau County, *Burr, J.*
Judgment modified.

*McGee & Goss,* for appellants.

Creditors include all persons having demands unpaid whether based on contract or on tort. Coly v. Aasen, 10 N. D. 108.

The fact that the parties to a conveyance are relations (in this case brothers-in-law) raises no presumption that such conveyance is fraudulent; but courts will scrutinize more closely than where no relationship exists. Fluegel v. Henschel, 7 N. D. 276, 74 N. W. 996.

Suspicious circumstances alone are not equivalent to proof of fraud, relationship of parent and child is not in itself a badge of fraud-insolvent debtor's preference of child is not fraudulent as a matter of law. First Nat. Bank v. Mensing, 180 N. W. 58.

Actual knowledge of buyer of seller's fraudulent intent may be proved by circumstantial evidence. Ward v. Stutzman, 212 S. W. 65.

Where a well-to-do farmer joins with his wife in conveying all their real and personal property to their son in a device to hinder and delay creditors, the device is of no avail. International Harvester Co. v. Hecker, 36 N. D. 95, 61 N. W. 1007.

*Fisk, Murphy, & Nash* and *J. J. Weeks,* for respondents.

The relationship between the parties is not a badge of fraud; it creates no presumption of fraud; neither does it warrant a judgment based upon suspicion. It calls for a closer scrutiny of the transaction than would be the case between strangers, but, applying a closer scrutiny to the transaction narrated in the testimony in the case at bar, we fail to see wherein there is any substantial testimony to prove fraud or a trust for the benefit of the father. First Nat. Bank v. Mensing, 180 N. W. 58.

NUESSLE, J. The plaintiffs are the holders of certificates of sale on execution against real property of the defendants W. J. Armstrong and D. I. Armstrong. They bring this action to set aside certain mortgages thereon on the ground that they are fictitious and fraudulent and were executed by the Armstrongs to defraud the plaintiffs and hinder and delay them in the collection of their just demands. The district court found for the defendants in most respects and judgment was entered accordingly. The plaintiffs appealed and the case is now here for trial de novo.

The named defendants, excepting Mary Armstrong, are brothers and sisters. Mary Armstrong is D. I. Armstrong's wife. The Armstrongs settled in Bottineau county more than thirty years ago. W. J. Armstrong is unmarried. At the time the mortgages complained of were given, he owned section 28 in township 159, range 76. D. I. Armstrong (David) owned the SE¼ of section 22 in the same township. In October, 1922, W. J. Armstrong was indebted to the various plaintiffs. The aggregate amount of this indebtedness was in the neighborhood of $7,500. This indebtedness was not secured. At that time his real estate was encumbered to the extent of nearly $6,000. He was in arrears for interest and taxes, so his total indebtedness was between $13,000 and $15,000. In addition to the land above described, he

owned a quarter section in McHenry county, of little value, and personal property consisting of machinery, livestock, grain, etc. D. I. Armstrong was likewise indebted to the plaintiffs banks for large amounts. His land was encumbered for $2,900 and he was in arrears for taxes. In January, 1922, he procured W. J. Armstrong to indorse certain of his notes, and as security gave him a second mortgage on his real estate for $2,700.

W. J. Armstrong had not prospered at farming for several years. Crop conditions had been bad and he had been going behind. In the fall of 1922 plaintiffs were pressing him for a settlement or adjustment of his unsecured indebtedness. Various arrangements were discussed and attempted whereby he might raise money wherewith to make settlement but no satisfactory arrangements were made. On October 21st, 1922, the Merchants National Bank wrote him saying that unless he saw them regarding his indebtedness on or before the 25th they would start action against him. He denies that he ever received this letter. On the 3d of October, 1922, he and D. I. Armstrong went to Bottineau and he executed four mortgages on section 28 for $1,625 each to D. I. Armstrong, Thomas Armstrong, James Armstrong, and Mary Ann Atkinson. On October 19th he executed a mortgage on this real estate for $5,000 to his sister Arabella Rands. About the same time he executed a bill of sale and mortgages to his brothers Robert and James for $4,000 covering his McHenry county land and his personal property. This was all the property was worth. At the same time he assigned the mortgage given to him by David in January, 1922, to Mary Armstrong, David's wife. After the execution and delivery by W. J. Armstrong of the $1,625 mortgage to David, the latter likewise assigned this mortgage to Mary Armstrong. All of the instruments affecting the real estate above described were simultaneously put of record on October 21st. The plaintiffs thereafter began suits on their unsecured indebtedness, attached the W. J. Armstrong land, obtained judgments on their claims, sold the land on execution, bidding in the same at such sales, and are now the owners and holders of the sheriff's certificates issued therefor.

Plaintiffs contend that the defendants W. J. Armstrong and D. I. Armstrong were insolvent at the time of the execution and delivery of the various mortgages here attacked, or that they were rendered

insolvent by the execution and delivery thereof. That such mortgages were fictitious and fraudulent and were executed and delivered with intent on the part of the mortgagors to defraud the plaintiffs and to hinder and delay them in the collection of their claims. That the various mortgagees and assignees to whom such mortgages were executed, delivered and assigned, knew or should have known that such mortgages were so executed, delivered and assigned with the intent and purpose on the part of the mortgagors and assignors to defraud the plaintiffs and to hinder and delay them in the collection of their claims and were parties to such fraudulent purpose, and that there was no consideration for such mortgages and assignments. That such mortgages were therefore void under § 7220, Comp. Laws 1913. On the other hand, the defendants contend that they were not insolvent and did not become so at the time of and upon the execution and delivery of such mortgages and assignments. That there was good and valid consideration therefor; that there was no intent to defraud plaintiffs or to hinder or delay them in the collection of their claims; that in any event what was done constituted preferences only and that the mortgagees and assignees received such mortgages and assignments without knowledge or notice on their part of any fraud or intent on the part of the mortgagors and assignors to hinder and delay the plaintiffs in the collection of their claims. The trial court found for all the defendants excepting the defendant, Mary Armstrong, and as to her found that there was no consideration for the assignments of the mortgages and that such assignments were void. He further found that D. I. Armstrong was insolvent. We think the record amply sustains the findings of the trial court as to D. I. Armstrong and Mary Armstrong. We therefore need give no further consideration to these particular matters excepting in so far as it may be necessary to do so incidentally in passing upon the validity of the mortgages executed by W. J. Armstrong.

This case is here for trial de novo. It is the duty of this court to consider the evidence as the same is produced here and to come to its own conclusions as to the vital ultimate facts. It is true that the trial judge had the advantage of hearing and seeing the witnesses as they testified in person before him. For that reason the trial court's findings are entitled to and should be given appreciable weight. But they

are not clothed with the same presumptions of correctness as in cases not triable here de novo. See Doyle v. Doyle, 52 N. D. 380, 202 N. W. 860; Christianson v. Farmers' Warehouse Asso. 5 N. D. 439, 32 L.R.A. 730, 67 N. W. 300.

Section 7220, Comp. Laws 1913, reads as follows:

"Transfers with Intent to Defraud Creditors Void. Every transfer of property or charge thereon made, every obligation incurred and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

Thus under this section we are chiefly concerned with the intent and purpose which actuated W. J. Armstrong in executing and delivering the mortgages complained of by the plaintiffs. If the mortgages were given and received with the intent to defraud, then they are void as to the plaintiffs. If they were not given and received with such intent then the plaintiffs have no ground to complain. Such fraudulent intent must be established as a matter of fact. See § 7223, Comp. Laws 1913; Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529. And the burden is upon the plaintiff to establish such fraudulent intent. Whether W. J. Armstrong was insolvent when he executed the mortgages or was rendered insolvent by their execution and delivery and whether there was consideration therefor, are matters to be considered in determining the intent with which such mortgages were executed.

In the first place the named defendants are brothers and sisters. They lived in the same community. They associated intimately with each other. There seems to have been exceptional family solidarity. It is inconceivable that each did not know about the affairs of the others. David in particular seems to have been the advisor and confidential agent for all of them. Now then, under such circumstances, how must these family transactions be viewed? The rule is well established that where a transaction which is challenged is between relatives that fact alone is not sufficient to justify a finding of fraud; but it is likewise the rule that such a transaction between relatives should be more closely scrutinized than where no relationship exists. See Ras-

mussen v. Chambers, 52 N. D. 648, 204 N. W. 178, and cases cited; First Nat. Bank v. Mensing, 46 N. D. 184, 180 N. W. 58.

The trial court found that W. J. Armstrong was not rendered insolvent by the execution of the mortgages challenged by this litigation. Notwithstanding the trial court had the advantage of seeing and hearing the witnesses we are impelled to hold that this finding is not sustained by the record. When the mortgages were executed in October, 1922, W. J. Armstrong owned Section 28. It was a fine farm, highly improved. The buildings were large and valuable. The land was fenced and cross-fenced with expensive fencing. There was a fine grove on the farm. Excepting the second mortgage executed to him by David it was the only property that W. J. Armstrong then possessed. At that time it was encumbered for $5,772 principal. The interest on this indebtedness had not been paid for two years. The taxes, ranging from $80 to $100 per quarter, had not been paid for two years and interest and penalty had accrued. Armstrong owed the plaintiffs about $7,500 and interest, (including his liability for David). In this situation he further encumbered the land to the extent of $11,500, making the total of his indebtedness, secured and unsecured, more than $24,000. The encumbrances totaled over $17,000. The land would have to bring much more than that amount in order to enable the unsecured creditors to realize upon their claims. The testimony as to the value of the land varies. W. J. Armstrong and D. I. Armstrong swore that it was worth from $45 to $55 per acre. On the other hand, witnesses for the plaintiffs testified that it was worth from $20 to $25 per acre. Conceding that the judgment of all these witnesses may have been colored by their interest in the ultimate result of the litigation, what are the other evidences? It is a well known fact, of which this court must take notice, that in the fall of 1922 when these mortgages were given the state was at the bottom of the agricultural depression ensuing the war. Mortgages were being foreclosed, banks were failing, and bankruptcies were common. Real estate was almost unsalable at any price. We are concerned here not with what the value of this property had been prior to the time of the transactions complained of, or what it may be worth now or in the future, but what it was worth at that time. These facts tend to corroborate the testimony of plaintiffs' witnesses as to the value of the property. Furthermore,

Armstrong's own acts and conduct point in the same direction. It does not seem reasonable to us that he would have thus disposed of and mortgaged his property had he then believed it to have the value which he, at the time of the trial, said that it had. It is certain that the effect of the execution of these various mortgages was such as to render it impossible for the plaintiffs, as unsecured creditors, to realize upon their claims through the means provided by the law. Therefore, Armstrong must be held thereby to have rendered himself insolvent. See 27 C. J. 501, and cases cited.

Armstrong had owed the plaintiffs for a long time. He had been evading settlement and adjustment. His creditors were pressing. He executed these mortgages which are complained of. Thereby he rendered himself insolvent. He did this although for years he had given the alleged obligations secured thereby no attention. He had paid no interest thereon. They had apparently been forgotten by his brothers and sisters. Not only that, though he was not pressed to do so, he executed the mortgages and bills of sale on and to his McHenry county land and all his personal property including farm machinery, farming equipment, and seed. He did not stop there but assigned the second mortgage which he had on David's land to David's wife to satisfy an obligation which he claimed he had incurred almost thirty years before and to which confessedly no attention had been paid either by Mrs. Armstrong or by himself in the interim. He did these things hurriedly, almost frantically. Likewise, although David was owing him on account of the obligation secured by David's second mortgage, he executed to David a mortgage for $1,625 and David at once assigned this mortgage to his wife. Both of these assignments we think, and the trial court so found, were without consideration. At various times while he was doing business with the plaintiff banks, W. J. Armstrong had signed property statements in which he recited that he owed no obligations to his relatives. He never at any time listed any of these obligations which he claimed to be paying by the execution and delivery of the mortgages. In explanation he says that he signed these statements without reading them and did not know that such representations were contained therein. It seems to us that all these things done by W. J. Armstrong, under the circumstances as they existed clearly indicate, that it was his intent and purpose to defraud the plain-

tiffs and to hinder and delay them in the collection of their demands against him.

In 1907 W. J. Armstrong mortgaged three quarters of section 28 to his father Robert Armstrong, Sr., to secure a note for $4,000 and interest. Robert Armstrong assigned this mortgage to D. I. Armstrong in May, 1909. It appears that the interest was paid to March, 1910. Robert Armstrong died in 1910. He left no will but left a written direction to D. I. Armstrong to distribute the proceeds of the $4,000 among his children James, Thomas, David and Mary Ann in equal shares. David satisfied this mortgage in 1914. Both he and W. J. Armstrong testified that this was done without consideration and to clear the record; that in fact no payment on account of this mortgage indebtedness was made subsequent to 1910; that when in October, 1922, W. J. Armstrong executed and delivered the four mortgages of which plaintiffs here complain to David, James, Thomas, and Mary Ann, he did this in satisfaction of the obligation secured by the $4,000 mortgage and in accordance with the written direction of his deceased father. There is no evidence to the contrary, and naturally from the nature of the controversy there would be none other than circumstances. On the contrary there is other evidence corroborating them. There is in evidence a will of Robert Armstrong executed in October, 1909, but later revoked, which specifically refers to the $4,000 mortgage and makes disposition of the proceeds of the same identically with the written direction of 1910. It also appears from the record that certain attorneys wrote David Armstrong as late as 1914 regarding the distribution of the estate of Robert Armstrong. Manifestly, these evidences were not manufactured for this lawsuit. Taking all of these things into consideration we are of the opinion, as held by the trial court, that W. J. Armstrong was in fact indebted to his father. That this indebtedness was assigned to David. That David satisfied this mortgage for purposes of convenience without collecting the same and the debt was in existence undischarged in October, 1922. That the mortgages to James, Thomas, and Mary Ann were executed in discharge of their shares of this obligation. So far as these mortgagees are concerned the record does not affirmatively establish in connection with this transaction anything more than an intention on their part to secure the payment of a debt owing to them. The most that can be

said is that in thus executing and delivering the mortgages Armstrong preferred James, Thomas, and Mary Ann to his other creditors. Such a preference does not in itself invalidate the instruments. See §§ 7217 and 7218, Comp. Laws 1913; Wannemacher v. Merrill, 22 N. D. 46, 132 N. W. 412; Godman v. Olson, 38 N. D. 360, 165 N. W. 515; Rasmussen v. Chambers, 52 N. D. 648, 204 N. W. 178; Phillips v. Phillips, 53 N. D. 66, 204 N. W. 985. And since it does not appear that the mortgagees had any other intent in taking the mortgages than to secure the obligations which were justly owing to them, the mortgagees are not subject to attack, although in giving them W. J. Armstrong intended thereby to defraud his other creditors, and such intention was known to the mortgagees. See Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Lockren v. Rustan, 9 N. D. 43, 81 N. W. 60.

We have, however, arrived at a different conclusion with reference to the mortgage executed and delivered to D. I. Armstrong. W. J. Armstrong became obligated on David's account in January, 1922. At that time he took David's second mortgage for $2,700 as security. He retained this until October, 1922. Then when he transferred or encumbered his other property as hereinbefore set out, he assigned this mortgage to David's wife. He said he did this in payment of a tract of land which he had bought from her thirty years before and for which he had not paid, as well as in payment of certain other obligations which he had incurred long before for board for himself and his employees. But it appears that Mary Armstrong had forgotten these transactions and when W. J. Armstrong proposed executing these assignments to her she was doubtful about the propriety of the suggestion and asked David if it was all right. He said it was, so she agreed. At the same time notwithstanding W. J. Armstrong was charged with the payment of David's note and David was insolvent. W. J. Armstrong gave the mortgage for $1,625 to David for David's share of his father's estate. Now David knew all of the circumstances of all these transactions. He apparently was W. J. Armstrong's advisor regarding them. Instead of crediting the amount of this obligation on his own indebtedness he took the mortgage and at once assigned it to his wife. It is impossible to escape the conclusion that W. J. Armstrong and David Armstrong were acting in collusion for the purpose of defrauding the plaintiffs and hindering and delaying them

in the collection of their claims. The mortgage was therefore void under § 7220, supra.

There remains the $5,000 mortgage executed to Arabella Rands. Defendant, W. J. Armstrong, testified that this mortgage was executed to secure an obligation originally incurred by him in 1902 or 1903. He says he at that time borrowed from his sister Arabella $4,200 and that this debt has never been paid. It now appears that during the years intervening he never did anything in any way evidencing any recognition of any obligation on his part to this sister. He never paid any principal or interest. He never gave any note or other evidence of indebtedness. No demand was ever made upon him for payment. His testimony is uncertain and conflicting in many respects. Pursuant to his testimony, he erected a business building in Willow City in 1903. He transferred this property to Thomas Rands, the husband of Arabella Rands. About this same time he transferred such other real estate as he had to his father and later compromised numerous debts that he owed. Subsequently he took a reconveyance from his father. In 1907, the building in Willow City burned down. It was insured and one of the drafts in payment of the loss was payable to Thomas Rands, but Armstrong received the proceeds. The record title to the property remains in Rands. It is the theory of the defendant that this arrangement was by way of security for the obligation to the Rands; that while the title stood in their name the insurance collected was paid to W. J. Armstrong. He insists that all of these circumstances corroborate his testimony that he owed the debt secured by the $5,000 mortgage. However, Arabella Rands, called as a witness, knew little about the matter. She testified that she and her husband had loaned money to W. J. Armstrong and that the same had never been paid. This loan was as early as 1903. She was uncertain as to the amount. She did not know the rate of interest, and so far as she knew no interest had ever been paid. She admitted that there was no written evidence of the indebtedness. She did not know how much was due at the time the $5,000 mortgage was given. No discussion of the matter was had prior to the execution of this mortgage. Armstrong told her he was settling with the heirs and he was going to give her a mortgage for $5,000. She said this was satisfactory. When he gave it to her she at once handed it to David and told him to record it. This

he did. Then he sent it to her but she at once sent it back to him. She offers no other explanation for this than that David was looking after matters for her. While there is no direct testimony controverting the claim of indebtedness as made by Armstrong and by Mrs. Rands, all the circumstances indicate that the obligation was purely fictitious, conjured for the occasion. Armstrong was insolvent. She was his sister. He was endeavoring to defraud his creditors. He hurriedly disposed of or attempted to dispose of all his property, excepting section 28, and that he mortgaged so as to absorb practically its full value.

The burden was upon the plaintiffs attacking these mortgages to establish their invalidity. In our judgment they have met the requirement as to proofs in so far as the mortgages to David Armstrong and Arabella Rands are concerned. Mortgages cannot be set aside on mere suspicion, but the proofs in this case raise more than a mere suspicion. A single circumstance would not warrant setting them aside, but here is a multitude of circumstances, each peculiar and significant in itself. One such circumstance might be explained away. Considered together each reinforces the others, and together all furnish as strong and satisfactory proof as it is generally possible to produce in cases of this character.

The order, therefore, must be that the judgment of the District Court be reversed in so far as it affects the mortgages executed and delivered by W. J. Armstrong to D. I. Armstrong and Arabella Rands, and that such mortgages be adjudged invalid and void as against the plaintiffs, and that in all other respects the judgment of the District Court be and is affirmed. Judgment will be entered accordingly.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and JOHNSON, JJ., concur.