ALVIN A. TOMLINSON, Respondent, v. THE FARMERS' & MERCHANTS' BANK OF SHEYENNE, a Corporation, Appellant.

(225 N. W. 315.)

Opinion filed May 3, 1929.

*Sinness & Duffy,* for appellant.

*F. R. Stevens* and *N. J. Bothne,* for respondent.

BURR, J. This is an action to foreclose a mortgage given by the defendants Tomlinsons, husband and wife, to Christina Tomlinson, the mother of Robert A. and by her assigned to the plaintiff. It was given November 14, 1923 and recorded November 17, 1923. The bank is a judgment creditor of the defendant Robert A. Tomlinson and claims a lien upon the mortgaged property. The judgment was entered on July 27, 1925. On November 1st, 1926 the bank caused the mortgaged premises to be sold on execution sale under this judgment. At the sale the property was sold and a certificate of sale issued to the bank. Foreclosure proceedings by advertisement had been commenced and on the application of defendant bank were enjoined. Thereafter this action was commenced. The Tomlinsons defaulted. It is the contention of the bank that this mortgage was given in fraud of creditors, that it was without consideration and void so far as the defendant bank is concerned.

The case was tried to the court and judgment entered in favor of the plaintiff. From the judgment so entered the defendant bank appeals, demanding a trial de novo in this court.

The points to be determined are simply: Is the alleged debt to the mother a bona fide debt, was the mortgage taken by her as security for this debt, and if so, what is the amount? Neither the mortgagor nor

the mortgagee raises any question as to these points. It is the defendant bank which attacks the mortgage as being in fraud of creditors.

An examination of the record shows that the issue is an issue of fact rather than of law. The parties in their briefs spend some time in discussing the rules which indicate fraud but there is no real controversy in regard to this. The rules upon which the appellant relies are quoted from 27 C. J. 488 et seq. and 12 R. C. L. 588 but are not in dispute. It is an indication of fraud where a transfer is made by a debtor in anticipation of a suit against him, especially where it leaves him without any estate or materially reduces his property; and when he conveys his property to a near relative in consideration of old debts, then barred by statute of limitations, particularly where the consideration for the mortgage is said to be advancements by a parent to a son, the court will look upon the transaction with suspicion, especially when coupled with the fact that the parties fail to produce complete explanatory proof. The court will demand proof of an intent and understanding that the money advanced should be repaid and will scrutinize carefully such transactions between relatives. Rasmussen v. Chambers, 52 N. D. 648, 204 N. W. 178.

We have had occasion recently to examine transactions between relatives. In the case of Serr v. Smith, 57 N. D. 890, 224 N. W. 299, dealings between father and son were held to be in fraud of creditors. This was in an action brought by the trustee to set aside certain conveyances. The trial court held that there was no consideration for the conveyances and that they were made to defraud the creditors. This decision was affirmed. In a somewhat earlier case, Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847, dealings between relatives were scrutinized and the court said:

"Mortgages given by an insolvent debtor who intends thereby to defraud and delay his other creditors of their demands are not subject to attack for fraud where they are taken by the mortgagees solely as security for bona fide debts, although the mortgagees knew of the fraudulent intent of the mortgagor."

Thus even if Robert Tomlinson, angered by the action of the bank in obtaining a judgment against him as endorser of his brother's notes when he claimed there was an agreement not to hold him liable, conceived the idea of putting his property out of the way so the bank could

not reach it, nevertheless if he actually and in good faith owed his mother and she took this mortgage as security for his debt and not for the purpose of aiding him in defrauding his creditors, her mortgage would be good even if she may have known he had the intent to defraud his creditors, but of this there is no proof whatever.

The law of this state is that "the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration." Comp. Laws 1913, § 7223. In the cases of Murie v. Hartzell, ante, 200, 225 N. W. 310 (decided May 3, 1929), and State Bank v. Munter, ante, 194, 225 N. W. 313 (decided May 3, 1929), we held that because of the provision of this section just quoted we cannot conclusively presume a fraudulent intent existed "from the fact that a conveyance was made without consideration; and by one who was at that time insolvent." Even an insolvent debtor has a right to prefer creditors and in First Nat. Bank v. Mensing, 46 N. D. 184, 180 N. W. 58, it is held:

"Relationship of parent and child between the parties to an alleged fraudulent conveyance is a circumstance calling for a close scrutiny of the transaction, but is not itself a badge of fraud; nor does it give rise to a presumption supplanting proof. Suspicious circumstances alone are not equivalent to proof of fraud, and do not warrant a judgment in the face of satisfactory evidence of bona fide debtor and creditor relations between parent and child. An insolvent debtor's preference of his child is not fraudulent as a matter of law."

The burden of proof is upon the bank to show that there was fraud in this transaction, as the bank is the one who asserts fraud culminating in the giving of the mortgage held by the plaintiff. See First Nat. Bank v. Mensing, and Merchants Nat. Bank v. Armstrong, supra.

The only witnesses are the plaintiff, the defendants Tomlinsons, the cashier of the defendant bank and the mother, Christina Tomlinson; and from their testimony and the various exhibits introduced we must determine the facts.

Plaintiff admits he is not a holder of the note and mortgage in due course, and makes no claim on this score.

The testimony shows Christina Tomlinson was left a widow, with five children just growing to manhood and womanhood. The property

of her husband went to her by common consent and she had some insurance money. For some time the family kept together and had varying success in farming. Robert is the oldest, has had various occupations, and lived in different places. For many years he lived at home and apparently was never compensated for any work he did there except receiving his living. Later, he attempted to open a repair shop in Devils Lake but failed at that. He obtained money from his mother to pay some of the debts. His testimony is that as far back as the year 1904 he received money from her from time to time. That year she gave him $265. By the year 1907 he had received over $1000 from her. He had filed on some land and required $720 to pay for the same when he proved up and she gave it to him. In 1916 she gave him a check for $1981 when he was buying land, and the next year she gave him $500 for the payment of taxes and other debts. There was introduced in evidence some twenty checks alleged to be checks for money which she gave to him from time to time and covering a long period of time. In addition thereto he testified she gave him money in other forms. The mother testified to at least one draft having been given him. Both the mother and Robert testified that these were loans, not gifts, and while nothing definite was said as to when they should be repaid, and while additional loans were given long after some loans were old nevertheless no notes were given. It was not until Robert became heavily involved in transactions in which the defendant bank was a party or was interested that the necessity of giving a mortgage to the mother was discussed. Robert says this was suggested by his sister and he readily agreed to it. The claim of the Tomlinsons is that the mother, who had kept all of the checks and accounts, with the aid of her sons and daughter examined these and picked out as many as they could find which showed loans to Robert. Also he went through his data, although he did not keep what could be called a set of books, and from this was ascertained the amount claimed to be due. All this was done at the time the bank was pressing Robert, and when he was involved with other creditors. This accounting was had in November 1923. He gave her his note for $7,222.82 with interest at seven per cent per annum and due November 14, 1926, with this mortgage to secure the note. The checks introduced in evidence, on their face, amount to $4,049.60. In addition to this there are whatever

drafts were issued—one being for $500. If the mother be entitled to interest on the loans she made then it must be evident the amount of the note given by Robert to his mother is practically the amount of the indebtedness, and the burden of showing that this is not correct is upon the appellant. If these facts related be true, and they are testified to by Robert Tomlinson and his mother, then the transaction is not fraudulent.

In September 1926 the plaintiff proceeded to foreclose the mortgage because no interest was paid. It is claimed that this is another indication of fraud. The record shows, however, that after the recording of the mortgage, the defendant bank had obtained its judgment, and in the fall of 1926 had execution issued and levied upon this same land, and the same was sold in November 1926, hence the foreclosure proceedings were had about the time the bank sued Robert, and obtained judgment and doubtless the threat stimulated the foreclosure. The testimony shows that during the time Robert says he owed the mother these amounts, and before he gave the note and mortgage to her, he had in his dealings with the defendant bank and other creditors, made what is known as financial statements wherein, in listing his liabilities, nothing is said regarding the debts due the mother. The explanation of Robert is that these financial statements were drawn up by the bank, were given by him to the banks and other creditors to aid them in obtaining loans from the War Finance Corporation and agricultural aid corporations, that his creditors put up his notes and notes of other debtors as collateral to their loans, that he was never asked whether he owed his mother anything, that he just gave them a cursory examination and signed where told. Mr. Grinde, the cashier of the bank, testified he got the information for the financial statements from Robert Tomlinson himself. However, it appears upon his cross-examination that he filled out the blanks and some of them are not quite accurate; that he himself in writing it out was not accurate in stating the total amount which he claimed Robert Tomlinson owed the bank. The amount for which Tomlinson was held as endorser rather than as principal had not been included, though the bank afterwards got judgment for this amount. One of these statements was prepared for the purpose of assisting in getting the bank a loan from the War Finance Corporation and evidently both sides overlooked some items of indebted-

ness. In one financial statement under the heading of "Amount due relatives" nothing appears in the blank opposite thereto, not even the word "nothing." It is true, however, that the signer thereof, Robert A. Tomlinson, states the statement is a true account of all of its debts, etc. But these financial statements are not the bases for any loan given by the bank to Robert A. Tomlinson and it is not claimed they are in themselves any evidence of fraud in the contraction of the debt to the bank. The cashier also testified that he never knew Robert claimed to owe anything to his mother. That Robert owed the bank is beyond question and that the relation between him and the bank became such that one might suspect he was not anxious to aid it in recovering all it claimed is also evident from the testimony.

The financial dealings between Robert and the bank covered a great many years, but it was not until the year 1923 that trouble arose between them owing to differences of opinion in regard to whether Robert was liable as endorser for a debt of his brother. When the trouble arose and the bank began pressing Robert on this liability as endorser, the mortgage to the mother was given. After the judgment was obtained Robert went through bankruptcy.

In the light of these facts, as tested by the rules laid down by the statute and the decisions, we cannot say the plaintiff has sustained the burden of proof in showing the transaction to be fraudulent. The trial court saw the witnesses, heard them testify and decided the transaction was not fraudulent.

In a carefully prepared memorandum opinion it calls attention to the fact that "first of all the burden of establishing the fraud is upon the person alleging it, in this case the bank." After considering the weight of the various indicia of fraud, especially the fact that the mortgagee and mortgagor are mother and son, the court "therefore finds that this mortgage was a good faith mortgage given to secure a bona fide debt and that the answering defendant has failed to sustain the burden of proof of the intention to defraud." If Robert owed his mother these items and she recovered even legal interest, the amount found to be due by the court was the amount of the note. There is evidence to sustain this finding. From the record alone we cannot say that the defendant bank has shown the transaction to be fraudulent,

and when we consider the superior opportunity the trial court had to weigh the evidence we see no reason for reversing the decision. The judgment therefore will be affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.